T.C. Memo. 1999-48


UNITED STATES TAX COURT


SKIRVIN G. JOHNSON, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 19196-92.                    Filed February 22, 1999.


Skirvin G. Johnson, pro se.

James E. Archie, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, Chief Judge:  Respondent determined deficiencies, additions to tax, and penalties with respect to petitioner's Federal income tax liabilities as follows:

| | | Additions to Tax and Penalties | | | |
|---|---|---|---|---|---|
| Year | Deficiency | Sec. 6651(f) | Sec. 6653(b)(1) | Sec. 6663(a) | Sec. 6661(a) |
| 1988 | $57,695 | -- | $43,271 | -- | $14,424 |
| 1989 | 50,454 | -- | -- | $37,841 | -- |
| 1990 | 19,458 | $12,051 | -- | -- | -- |

Respondent conceded that there was neither a deficiency in income tax nor additions to tax due from petitioner for 1988. After concessions for 1989 and 1990, the issues remaining for decision are: (1) Whether petitioner's gross income for 1989 includes a $94,343.16 payment to Johnson McGee Companies, NA, Inc. (Johnson McGee), and $698.23 in interest earned by petitioner; (2) if so, whether the underpayment of tax attributable to those amounts is attributable to fraud; and (3) whether petitioner's gross income for 1990 includes $26,115 in wages.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

### FINDINGS OF FACT

Some of the facts have been stipulated, and the facts set forth in the stipulation are incorporated in our findings by this reference. Skirvin G. Johnson (petitioner) resided in Phoenix, Arizona, at the time the petition in this case was filed. He has a bachelor of business administration degree in marketing and

small business management from the University of Texas at Arlington and a master of business administration degree, with an emphasis in finance, from the University of Dallas at Irving, Texas.

During the first part of 1988, petitioner was employed by the City of Phoenix, Arizona, as an economic development specialist in the Phoenix Economic Development Department. In this capacity, petitioner oversaw the minority-owned and women-owned Small Business Enterprise Revolving Loan Program (revolving loan program) that was charged with promoting minority-owned and women-owned businesses and with creating and retaining jobs in Phoenix. Loans made by the revolving loan program were funded with Federal Housing and Urban Development (HUD) moneys.

In March 1988, a loan in the amount of $42,000 was made from the revolving loan program to Cortez Distribution (Cortez). The loan application for this loan was allegedly signed by Everett Rand (Rand), the general manager of Cortez. In April 1988, a similar loan in the amount of $58,000 was made from the revolving loan program to American Products Company (American Products). Petitioner was the loan officer for each of these loans and managed the loan process in both cases. Hereinafter, the Cortez and American Products loans will be collectively referred to as the Phoenix loans.

When petitioner discontinued his employment with the City of Phoenix in May 1988, Cindy Lizarraga, an employee of the City of Phoenix, was given the responsibility of servicing and maintaining the Phoenix loans. Upon discovering that the files for these two loans were incomplete, she took the necessary steps to obtain copies of the missing documentation. Ultimately, she was unable to procure records that established whether the proceeds of the Phoenix loans were actually used for their intended purpose.

In July 1988, petitioner went to work as the assistant director for business finance in the Economic Development Division of the City of Austin, Texas (Austin Economic Development Division). In this capacity, he had the authority to generate and service loans primarily funded by HUD. On October 9, 1989, the Austin Economic Development Division issued a check in the amount of $250,000 to fund a loan granted to Hilary Richard Wright Industries (HRW). Petitioner managed the HRW loan, and the loan proceeds were deposited into an account at Bank of the Hills, the repository and loan servicing agent for the HRW loan.

On October 11, 1989, petitioner, in his official capacity with the City of Austin, directed Bank of the Hills to issue a cashier's check in the amount of $86,045.11 to Dunn's International Group (Dunn) to purchase woodworking equipment for

HRW.  Petitioner also directed that a cashier's check in the amount of $94,343.16 be issued to Johnson McGee to purchase lumber for HRW.  The cashier's checks, dated October 12, 1989, were forwarded to petitioner's office in accordance with his request.

The check issued to Dunn was endorsed in the name of Wendell Wilson (Wilson).  The check to Johnson McGee was later endorsed by petitioner and deposited into the Johnson McGee checking account at Petra International Banking Corporation (Petra).  This account was opened by petitioner, and his name was the only name appearing on the signature card.  During 1989, the funds in the Johnson McGee account earned $698.23 in interest.

In October 1989, the Phoenix Economic Development Department received a letter and cashier's check from Dunn, repaying the full amount of the Phoenix loan to American Products.  The letter indicated that Dunn had acquired American Products' assets in a recent purchase and was repaying the full amount of the $58,000 loan, including interest.  With respect to the Cortez loan, the City of Phoenix received a cashier's check from Johnson McGee in full repayment of the loan on or about February 14, 1990.  Following these payments, the Phoenix Economic Development Department attempted to verify that the loan proceeds were used for their intended purpose.  Their attempts, however, were unsuccessful.

Because the Phoenix Economic Development Department was unable to contact the principals of Cortez and American Products or to secure documentation regarding the use of the Phoenix loans, Detective Ronald Sterrett (Sterrett) of the Phoenix Police Department Crime Bureau was assigned to investigate the activities of petitioner regarding the Phoenix loans. The investigation resulted in petitioner's arrest on May 16, 1990, and his indictment on May 23, 1990.

Sterrett interviewed petitioner following the arrest, and petitioner made several admissions regarding his connection with the Phoenix loans and Johnson McGee. First, petitioner admitted to filling out forms on behalf of Cortez for the loan. He also admitted to forging the signature of Rand on documents submitted to the revolving loan program as well as to owning a concessions business he had purchased from Rand. In addition, petitioner paid off the Cortez loan using funds from Johnson McGee, a company he admitted to owning. With respect to the American Products loan, petitioner admitted to filling out a check on behalf of American Products for $50,500, endorsing it, and depositing it into his personal bank account.

On his 1988 Federal income tax return, petitioner reported $40,871 in gross income, and, on his 1989 Federal income tax return, he reported $47,748 in gross income. Petitioner did not, however, report as income any amount relating to the Phoenix

loans or the Johnson McGee payment in either year.  In 1990, petitioner earned $26,115 in wages from the City of Austin but failed to file a Federal income tax return reporting that income.

Sterrett's investigation never identified a business named American Products, and there was only limited evidence that there was a business operating as Cortez.  The indictment of petitioner regarding these transactions, however, was later dismissed.

Following petitioner's arrest and indictment for the Phoenix loans, Larry Anderson (Anderson), a senior auditor with the City of Austin, conducted an investigation of loans made by the Austin Economic Development Division that were managed by petitioner. Anderson's investigation primarily focused on the HRW loan. During Anderson's investigation, he discovered a computer diskette in petitioner's office that contained copies of letters regarding Cortez, bearing a signature line for Rand.  The diskette also contained documents regarding HRW and the HRW loan request, identifying Wilson as one of the primary officers of HRW.  Wilson was purportedly also related to Dunn, the company that defrayed the American Products loan.  Additional letters that were saved to the diskette contained a signature line for petitioner.

It would have been improper for petitioner to have a personal interest in any business that the loan staff was managing.  Anderson was never able to locate businesses operating

as HRW, Dunn, or Johnson McGee. His investigation ultimately revealed that there was no HRW business, business assets, or security for the HRW loan.

Accordingly, the HRW loan matter was turned over to the Austin Police. During the police investigation, the individuals listed on the HRW loan documents as officers of HRW denied any connection with HRW. The police investigation culminated in January 1992 with petitioner's indictment on Federal embezzlement, theft, and fraud charges.

Petitioner was convicted on three counts of theft and money laundering by a jury verdict. United States v. Johnson, No. A-90-Cr-191 (W.D. Tex. 1992). Petitioner appealed the convictions to the United States Court of Appeals for the Fifth Circuit, which remanded the case to the District Court. United States v. Johnson, 16 F.3d 69 (5th Cir. 1994), modified 18 F.3d 293 (5th Cir. 1994). After a hearing, the District Court ordered a new trial, but, on appeal, the Fifth Circuit Court of Appeals reversed. United States v. Johnson, 95 F.3d 1149 (5th Cir. 1996), cert. denied, 117 S. Ct. 622 (1996). Petitioner filed an appeal with the Court of Appeals for the Fifth Circuit regarding the recent denial of his postconviction relief request. That appeal is still pending.

ULTIMATE FINDINGS OF FACT

Petitioner received income in 1989 in the amounts of $94,343.16 and $698.23 in interest earned on those funds and failed to report those amounts on his Federal income tax return for 1989.

Petitioner underpaid his Federal income tax for 1989, and the underpayment was due to fraud.

                              OPINION

Respondent determined that petitioner had unreported income from funds he embezzled in 1989. With respect to the deficiency, the burden is upon petitioner to prove that respondent's determination of unreported income is incorrect. Nicholas v. Commissioner, 70 T.C. 1057, 1064 (1978).

Petitioner has not satisfied this burden. He testified that Johnson McGee was owned by his uncle, who was relocating the Johnson McGee business to the United States from Liberia, and petitioner indicated that the only reason his name was on the Johnson McGee account was because he was assisting his uncle. Petitioner also testified that his uncle was killed attempting to escape from Liberia and that petitioner continued to control the Johnson McGee bank account as the executor of his uncle's estate. This testimony, however, is inconsistent with petitioner's earlier admission to Sterrett that he was the owner of Johnson McGee and that he used the funds in the Johnson McGee account to repay a loan he illegally procured in 1988. Petitioner has

offered no evidence to corroborate his testimony, and, without more, petitioner's explanation is implausible and not credible.

Respondent also determined that petitioner's underpayment of income tax for 1989 was due to fraud. The penalty in the case of fraud is a civil sanction provided primarily as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud. Helvering v. Mitchell, 303 U.S. 391, 401 (1938). Respondent has the burden of proving, by clear and convincing evidence, an underpayment for 1989 and that some part of an underpayment for that year was due to fraud. Sec. 7454(a); Rule 142(b). If respondent establishes that any portion of the underpayment is attributable to fraud, the entire underpayment is treated as attributable to fraud and subjected to a 75-percent penalty unless the taxpayer establishes that some part of the underpayment is not attributable to fraud. Sec. 6663(b). Respondent's burden is met if it is shown that the taxpayer intended to conceal, mislead, or otherwise prevent the collection of taxes. Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983).

The existence of fraud is a question of fact to be resolved upon consideration of the entire record. King's Court Mobile Home Park, Inc. v. Commissioner, 98 T.C. 511, 516 (1992). Fraud will never be presumed. Beaver v. Commissioner, 55 T.C. 85, 92 (1970). Fraud may, however, be proved by circumstantial evidence

and inferences drawn from the facts because direct proof of a taxpayer's intent is rarely available.  Niedringhaus v. Commissioner, 99 T.C. 202, 211 (1992).  The taxpayer's entire course of conduct may establish the requisite fraudulent intent. Stone v. Commissioner, 56 T.C. 213, 223-224 (1971).

Under section 61, gross income is defined as "all income from whatever source derived".  This includes unlawful earnings. Accordingly, when a taxpayer acquires embezzlement proceeds, without the consensual recognition of an obligation to repay and without restriction as to disposition, he has income that he is required to report.  James v. United States, 366 U.S. 213, 219 (1961).

In this case, respondent presented clear and convincing evidence that petitioner embezzled HUD funds in 1989 and did not report them on his Federal income tax return.  Respondent's evidence satisfies the burden of proof independent of petitioner's failure to meet his burden of proof regarding the deficiency.  Parks v. Commissioner, 94 T.C. 654, 661 (1990) (stating that "We must be careful in such cases not to bootstrap a finding of fraud upon a taxpayer's failure to prove respondent's deficiency determination erroneous").

In 1988 and 1989, petitioner received HUD funds from loans to fictitious entities while serving as the loan officer on those loans.  With respect to the HRW loan, proceeds of the $94,343.16

cashier's check to Johnson McGee were deposited in the Johnson McGee account at Petra, an account that petitioner admittedly owned and controlled.  He also admitted to using a portion of those funds to repay the Cortez loan, a loan he admitted illegally procuring in 1988.

There is no evidence of a consensual recognition by petitioner and the City of Austin, express or implied, that petitioner was obligated to repay the $94,343.16.  See James v. United States, supra at 219.  In addition, petitioner possessed unrestricted control over the disposition of those funds and earned $698.23 in interest from the Johnson McGee account.  See Rutkin v. United States, 343 U.S. 130, 137 (1952) (stating that holder has such control over it when he has the "freedom to dispose of it at will").  He failed, however, to report on his 1989 Federal income tax return any amount related to Johnson McGee.  The underreporting of income resulted in an underpayment of tax because there is no suggestion of offsetting deductions in this case.  The amounts repaid by petitioner have been conceded by respondent as not includable in income.  Cf. United States v. Rosenthal, 470 F.2d 837, 842 (2d Cir. 1972) (repayments did not negate fraud but were designed to keep scheme afloat).

Fraudulent intent may be inferred from various kinds of circumstantial evidence or "badges of fraud", including an understatement of income, inadequate records, implausible or

inconsistent explanations of behavior, concealment of income or assets, filing false documents, engaging in illegal activities, and attempting to conceal illegal activities. Niedringhaus v. Commissioner, supra at 211. The sophistication, education, and intelligence of petitioner are also relevant in determining fraudulent intent. Id. A willingness to defraud another in a business transaction may point to a willingness to defraud the Government. Solomon v. Commissioner, 732 F.2d 1459, 1462 (6th Cir. 1984), affg. per curiam T.C. Memo. 1982-603. Although no single factor is necessarily sufficient to establish fraud, the existence of several indicia is persuasive circumstantial evidence of fraud. Beaver v. Commissioner, supra at 93.

The record in this case is replete with evidence of these "badges of fraud". Petitioner was a knowledgeable taxpayer but understated, in substantial amount, his gross income for 1989. He embezzled HUD funds and attempted to cloak his activities with a protracted and integrated course of actions designed to conceal the embezzlement income. Specifically, petitioner forged numerous documents, received embezzled funds, and embezzled more money to repay the previous embezzlement. Petitioner disguised his participation in HUD loans by using false identities, including those of Rand, American Products, Cortez, Johnson McGee, and HRW. Moreover, petitioner's explanation of the transactions is implausible, and his testimony regarding his

uncle is unsupported by corroborating evidence and not worthy of belief.

"[C]oncealment of assets or covering up sources of income, handling one's affairs to avoid making the records usual in transactions of the kind, and any conduct, the likely effect of which would be to mislead or conceal" constitute a willful attempt to evade tax. Spies v. United States, 317 U.S. 492, 499 (1943). Accordingly, respondent has proven by clear and convincing evidence that petitioner is liable for the penalty for fraud, and petitioner has not proven that any part of the underpayment is not attributable to fraud.

Respondent also determined a deficiency with respect to the $26,115 that petitioner earned in wages in 1990. Petitioner offered no proof at trial to disprove respondent's determination. Accordingly, petitioner has failed to prove respondent's determinations erroneous with respect to the $26,115 that he earned in wages in 1990.

To reflect the foregoing,

Decision will be entered under Rule 155.