**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 92-8179

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SKIRVIN GEORGE JOHNSON,

Defendant-Appellant.

Appeals from the United States District Court
for the Western District of Texas

(     February 28, 1994     )

Before POLITZ, Chief Judge, REAVLEY and EMILIO M. GARZA, Circuit
Judges.

POLITZ, Chief Judge:

Skirvin George Johnson appeals his convictions for theft from
a federally funded program, 18 U.S.C. § 666, and money laundering,
18 U.S.C. § 1956(a)(1)(A)(1).  For the reasons assigned we vacate
and remand for a new trial.

## Background

From October 1984 to June 1988 Johnson was employed by the
City of Phoenix as a loan officer in the Community Development
Department which typically funded block grants from HUD to minority

businesses. In July 1988 Johnson went to work for the City of Austin as Deputy Director of the Planning and Economic Development Department, acting as a servicing officer in loan and grant programs operated primarily with funds provided by HUD. During Johnson's tenure with the City of Phoenix he made four suspicious loans which, upon investigation, served as the basis for an Arizona indictment and issuance of an Arizona arrest warrant. While working for the City of Austin it appeared that Johnson authorized another suspicious loan to Hillary Richard Wright Industries, Inc. (HRW). It was alleged that money from that loan was used to pay off some of the suspicious Phoenix loans. The convictions which are the subject of this appeal pertain to alleged misappropriations while Johnson was working for the City of Austin.

On May 16, 1990, Phoenix police officer Ron Sterrett, accompanied by two Austin police officers and an Austin detective sergeant, executed an Arizona arrest warrant on Johnson at his place of employment with the City of Austin. Johnson was alone when Officer Sterrett walked in and informed him that he was under arrest based upon charges of fraudulent conduct related to his employment with the City of Phoenix. Johnson was told to sit down at his desk but got up two or three times. Officer Sterrett testified on direct examination at the suppression hearing that "After that situation was resolved and Mr. Johnson stayed in his chair, we conducted a cursory search in the office and obtained some evidence."

The office was approximately ten feet by twelve feet and

2

contained Johnson's work desk, a smaller desk, a computer terminal, filing cabinets, and two chairs located near the office door. Officer Sterrett noticed papers on top of Johnson's desk and Johnson's briefcase on top of one of the chairs located approximately eight feet from where Johnson was sitting. He also saw a checkbook cover in the briefcase but could not tell if it related to the Phoenix case without removing it from the briefcase. He seized checks, bank account registers, business cards, wallets, an empty envelope, and other documents found in the briefcase. No weapons were found. The officer candidly testified that he looked through the briefcase because he thought he would find evidence relating to the Phoenix charges. Thereafter he searched the top of Johnson's desk, seizing an Austin memorandum which contained Johnson's handwriting sample, and then methodically searched the filing cabinets and a coat hanging on a coat rack.

Johnson's arrest and the search of his office lasted between 20 and 30 minutes. Johnson was not handcuffed while in his office nor was his clothing or body searched for weapons. At least one police officer remained behind Johnson while Officer Sterrett searched his office and briefcase, and the four officers remained in the office, watching Johnson, during the entire period. Officer Sterrett candidly acknowledged that he did not have probable cause to search Johnson or his office and that he had no reason to believe that Johnson would resist arrest, have a weapon, or try to destroy evidence. Officer Sterrett stated that searching the briefcase and other areas of the office was just "good police

3

work."

Johnson was transported to the Austin Police Department where Officer Sterrett advised him of his **Miranda**[1] rights.  Although Johnson claimed he requested an attorney, Officer Sterrett contends that Johnson's request for counsel was limited to a desire to discuss his immigration status.  Thereafter Officer Sterrett interrogated Johnson and elicited responses pertaining to the Phoenix charges.

When the City Auditor became aware of Johnson's arrest she assigned Larry Anderson to investigate the Austin loan files to determine whether Johnson had misappropriated any Austin funds.  On the day of the arrest Anderson and his superior surveyed Johnson's office to determine the number of auditors needed to inspect the files.  Anderson and several auditors returned the next day and found seven computer disks, including one marked "HRW," inside a folder near Johnson's computer.  Anderson made a printout of the disc and discovered incriminating letters from Johnson about some Phoenix loans and HRW's articles of incorporation.  Anderson testified that when he entered Johnson's office he was not acting on behalf of the police or any other law enforcement agency but, rather, was acting upon direction from the City Auditor.

Johnson was charged in a three-count indictment with theft from a federally funded program in violation of 18 U.S.C. § 666 and two counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(1), and was convicted.  The district court imposed

---

[1]384 U.S. 436 (1966).

three concurrent 60-month terms of imprisonment, 3 years supervised release, a $143,499 fine, restitution in the amount of $190,998.11 plus interest, and $150 special assessment. Johnson timely appealed.

Analysis

Johnson raises seven points on appeal, three of which involve the denial of his motion to suppress evidence. On appeal from the denial of a motion to suppress we review the district court's factual findings under the clearly erroneous standard and its conclusions of law de novo.[2] Johnson first maintains that the district court erred in denying his motion to suppress evidence seized during the search of his Austin office. Specifically, Johnson claims that the search of his briefcase and desk exceeded the scope of a search incident to arrest. As the district court correctly noted, **Chimel v. California**[3] is the controlling authority. We disagree, however, with the district court's application of the **Chimel** teachings.

In **Chimel**, the Supreme Court held that a search incident to an arrest is a reasonable search permitted by the fourth amendment, even if the police do not have a search warrant.[4] In a search incident to arrest, the police may search the arrestee's person and "the area 'within his immediate control' --construing that phrase

---

[2]**United States v. Diaz**, 977 F.2d 163 (5th Cir. 1992).

[3]395 U.S. 752 (1969).

[4]Id. at 762-63.

5

to mean the area from within which he might gain possession of a weapon or destructible evidence."[5] Johnson was approximately eight feet away from his briefcase, sitting in his chair with at least one police officer standing behind him and three other officers in the room. The testimony by Officer Sterrett makes clear that he did not think that Johnson might gain possession of a weapon or destroy any evidence in the briefcase. Johnson was not handcuffed.[6] Although the record indicates that Johnson stood up two or three times, Officer Sterrett never felt threatened or believed that Johnson was about to destroy evidence; Officer Sterrett was concerned only with having Johnson sit down so that he could proceed with his search of the office. More importantly, at the time of both the arrest and search, the briefcase was not within Johnson's area of immediate control.

An illuminating statement was made by Officer Sterrett in response to defense counsel's question about his search of the briefcase. Officer Sterrett responded, "When I found a checkbook in there and opened it up, I believed that there could be other evidence in the briefcase." Officer Sterrett was in search of relevant evidence. The fourth amendment did not enter into the equation. He conducted precisely the type of generalized, warrantless search prohibited by **Chimel**. The Supreme Court there

---

[5]Id. at 763.

[6]**United States v. Griffith**, 537 F.2d 900, 904 (7th Cir. 1976) (finding that the failure to handcuff defendant and allowing him to walk around the room vitiated any contrived fear that defendant would resist arrest or destroy evidence).

6

stated:

> After arresting a man in his house, **to rummage at will among his papers in search of whatever will convict him**, appears to us to be indistinguishable from what might be done under a general warrant; indeed, the warrant would give more protection, for presumably it must be issued by a magistrate. True, by hypothesis the power would not exist, if the supposed offender were not found on the premises; but it is small consolation to know that one's papers are safe only so long as one is not at home.[7]

The same rationale applies to an office search. Such a callous disregard for the fourth amendment cannot be countenanced.

As the Supreme Court acknowledged in **Chimel**, "[t]he search here went far beyond the petitioner's person and the area from within which he might have obtained either a weapon or something that could have been used as evidence against him."[8] Indeed, the search conducted by Officer Sterrett was never purported to be a search incident to arrest. To the very contrary, Officer Sterrett directly refuted those purposes.[9] Officer Sterrett never searched

---

[7]**Chimel**, 395 U.S. at 767-68 (quoting **United States v. Kirschenblatt**, 16 F.2d 202, 203 (2d Cir. 1926)) (emphasis added).

[8]**Chimel**, 395 U.S. at 768.

[9]Although **United States v. Robinson** provides that the "authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect," 414 U.S. 218, 235 (1973), and that rationale was extended to searches within an arrestee's area of immediate control in **New York v. Belton**, 453 U.S. 454, 461 (1981), see **United States v. Johnson**, 846 F.2d 279, 282 (5th Cir.), cert. denied, 488 U.S. 995 (1988), Officer Sterrett's sworn statements leave us without doubt that the purposes were never served. Thus an inquiry into the probability that the purposes were being served is unnecessary in light of the record and Supreme Court precedent and unnecessary for resolution of this case.

Johnson's person, nor did he search the area within Johnson's immediate control. Instead, Officer Sterrett proceeded to conduct a search of the office for relevant evidence relating to the Phoenix charges. Contrary to Officer Sterrett's stated observation, this was not "good police work" but, rather, was a search in blatant contravention of the fourth amendment.[10]

We decline the government's request to extend New York v. **Belton**[11] to office searches. **Belton** makes clear that its holding is limited to its facts and merely serves as an explication of **Chimel** with respect to interior searches of an automobile.[12] The government's citation to our decision in **United States v. Johnson**,[13] is likewise not persuasive; that case is factually distinct. In **Johnson**, we upheld the search and seizure of a zipper-type briefcase on a desk between postal inspectors and a post office employee because it was "beyond doubt that the briefcase was within [the employee's] reaching distance, and, therefore, under his

---

[10]This is not to say that Officer Sterrett's improper intent in pursuing the search incident to arrest would invalidate an otherwise valid search. See **United States v. Causey**, 834 F.2d 1179 (5th Cir. 1987). Here, the search was invalid because it occurred outside the area within Johnson's immediate control.

[11]453 U.S. 454 (1981).

[12]See **Belton**, 453 U.S. at 460 n.3:

Our holding today does no more than determine the meaning of Chimel's principles in this particular and problematic content. It in no way alters the fundamental principles established in the Chimel case regarding the basic scope of searches incident to lawful custodial arrests.

[13]846 F.2d 279 (5th Cir.), cert. denied, 488 U.S. 995 (1988).

immediate control."[14]  Here the record makes clear that at the time of the arrest and search Skirvin Johnson was approximately eight feet away from his briefcase, sitting in his chair with at least one police officer standing behind him and three other police officers around him.  The briefcase was beyond Skirvin Johnson's immediate control, and thus the motion to suppress evidence obtained from the briefcase should have been granted.[15]  We conclude, however, that the Austin memorandum found on top of Johnson's desk was within Johnson's area of immediate control and properly was not suppressed.

Secondly, Johnson claims that the district court erred in denying his motion to suppress his inculpatory custodial statements made after he invoked his right to counsel.  The government maintains that after Johnson was given the **Miranda** warnings he indicated a desire to consult with an attorney regarding immigration only; that at no time did he indicate he wished to remain silent and to be free of interrogation until an attorney was present.  Johnson argues that consultation about his immigration status necessarily would involve consultation about the criminal offense and vice versa.  This argument fails to persuade.  The district court found for the government on this issue and that

---

[14]Id. at 283.

[15]The government cites **United States v. De Leon-Reyna**, 930 F.2d 396 (5th Cir. 1991)(en banc) for the alternative proposition that this search fell within the good faith exception to a warrantless search.  Good faith is not an apt description of what occurred in the case at bar; thus we find the government's contention meritless.

9

finding must be accepted unless it is clearly erroneous or influenced by an incorrect view of the law.[16]  We find no clear error on the part of the district court in its findings that Johnson only invoked his right to counsel with respect to his immigration status.  We remand to the district court to consider, however, whether any statements concerning the Phoenix-related documents seized from Johnson's briefcase are fruit of the poisonous tree.[17]

Johnson also contends that the district court erred in denying his motion to suppress computer disks seized from his office. Johnson maintains that seizure of his personal computer disks was unreasonable because the disks were not physically part of the City of Austin files nor were they in the cabinet with the files. Johnson also maintains that the reference to "HRW" on one of the disks did not support the inference that it would contain some portion of the HRW loan file and that seizure of the other disks which were without any reference to HRW and printing out their contents was unreasonable.  These arguments are unconvincing.

In **O'Connor v. Ortega**[18] the Supreme Court held that "public employer intrusions on the constitutionally protected privacy interests of government employees for non-investigatory, work-related purposes, as well as for investigations of work-related misconduct, should be judged by the standard of reasonableness

---

[16]**United States v. Gallo**, 927 F.2d 815 (5th Cir. 1991).

[17]**Brown v. Illinois**, 422 U.S. 590 (1975).

[18]480 U.S. 709 (1987).

10

under all the circumstances."[19]  Both the inception and the scope of the intrusion must be reasonable.[20]  We find that the search of Johnson's office by Auditor Anderson was the result of an internal investigation by the City of Austin directed at uncovering work-related employee misconduct and was therefore reasonable under the circumstances.  No law enforcement agency requested the Audit Department to search Johnson's office.  It was reasonable to infer that the disk marked "HRW" would contain information relating to the HRW loan file and that the other disks would contain information involving other loans administered by Johnson.

Because of our resolution of the first three issues regarding Johnson's motion to suppress, we do not address the asserted errors regarding Johnson's motion in limine to exclude evidence of the four Phoenix loans, the challenge to the sufficiency of the evidence, denial of Johnson's motion for continuance, and alleged improper remarks by the prosecutor during closing argument.

The convictions are VACATED and the matter is REMANDED for further proceedings consistent herewith.

EMILIO M. GARZA, Circuit Judge, concurring in part and dissenting in part:

The majority concludes that "[t]he briefcase was beyond Skirvin Johnson's immediate control, and thus the motion to

---

[19]Id. at 725-26.

[20]Id. at 726.

suppress evidence obtained from the briefcase should have been granted."  Because this conclusion rests on a selective reading of parts of Officer Sterrett's testimony,[21] I cannot concur that the district court's finding))that the briefcase five to six feet from where Johnson was sitting was within Johnson's immediate control))was clearly erroneous.[22]

This was not a situation where "law enforcement officers have reduced property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence." *United States v. Chadwick,* 433 U.S. 1, 15, 97 S. Ct. 2476, 2485, 53 L. Ed. 2d 538 (1977).  Officer Sterrett testified that:  (1) Johnson was not handcuffed; (2) Johnson got up two or three times from his chair; and (3) "when [Johnson] got up, he was right next to the briefcase.  He could have put his hand in the briefcase."  Second Supplemental Record on Appeal at 38.  Based on these facts))and that the briefcase was only five or six feet away from Johnson))the district court's finding that the briefcase was within Johnson's immediate control was certainly plausible.

"[A]n appellate court is not free to reweigh the evidence or

---

[21]     For example, the majority states that "Johnson was approximately eight feet away from his briefcase."  Sterrett testified, however, that Johnson was six to eight feet away; Johnson testified that he was five to six feet away. Whether Sterrett may have had an improper intent in searching the briefcase is, as the majority concedes, irrelevant to the issue of immediate control.

[22]     *See Amadeo v. Zant,* 486 U.S. 214, 223, 108 S. Ct. 1771, 1777, 100 L. Ed. 2d 249 (1988) ("If the district court's account of the evidence is plausible in light of the record viewed in its entirety, [this Court] may not reverse it even though convinced that had [we] been sitting as the trier of fact, [we] would have weighed the evidence differently." (attribution omitted)).

to . . . substitute for the district court's reasonable factual inferences from the evidence other inferences that the reviewing court may regard as more reasonable." *Glass v. Petro-Tex Chem. Corp.,* 757 F.2d 1554, 1559 (5th Cir. 1985) (citing *Pullman-Standard v. Swint,* 456 U.S. 273, 284, 102 S. Ct. 1781, 1788, 72 L. Ed. 2d 66 (1982)). Accordingly, I respectfully dissent from that part of the majority's opinion. *See Chimel v. California,* 395 U.S. 752, 763, 89 S. Ct. 2034, 2040, ___ L. Ed. 2d ___ (1969); *United States v. Johnson,* 846 F.2d 279, 283 (5th Cir. 1988).