771 A.2d 1261

COMMONWEALTH of Pennsylvania, Appellee,

v.

Anthony TAYLOR, Appellant.

Commonwealth of Pennsylvania, Appellee,

v.

John Mahone, Jr., Appellant.

Supreme Court of Pennsylvania.

Argued Sept. 14, 1999.

Decided May 23, 2001.

Nigro, J., concurred and dissented and filed opinion in which Flaherty, C.J., and Zappala, J., joined.

144

Kathleen A. Cribbins, Pittsburgh, for Anthony Taylor.

Claire C. Capristo, Michael W. Streily, Pittsburgh, for Com.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## OPINION ANNOUNCING JUDGMENT OF COURT

NEWMAN, Justice.

Anthony Taylor (Taylor) and John Mahone (Mahone) appeal from the Superior Court's Order, which reversed the suppression of evidence seized during the execution of a search warrant for a convenience store. The present consolidated

appeal questions whether the searches conducted in the basement of the convenience store and the subsequent seizures of evidence violate the Fourth Amendment to the United States Constitution. Because we disagree with portions of the Superior Court's decision, we affirm the order of the Superior Court in part and reverse in part.

## FACTS AND PROCEDURAL HISTORY

The Duquesne Police Department received numerous complaints about drug trafficking activity in the G–Service Convenience Store at 418 Crawford Avenue, in Duquesne, Pennsylvania. In response to the complaints, the police set up surveillance outside the store. On December 13, 1994 and January 4, 1995, the surveillance officer noted the patrons who visited the store and the short length of time many of those patrons spent inside the store. Several weeks later, the police sent a confidential informant into the store to make a controlled buy. The informant returned with crack cocaine that he had purchased from Eric Gooden, the owner of the G–Service Convenience Store.

Based upon the information gathered from the surveillance and the informant's controlled buy, the police obtained a search warrant authorizing a search of the G Service Convenience Store. On January 20, 1995, a search team effectuated the warrant. Inside the store, the police found Gooden and a large quantity of crack cocaine behind a counter. While part of the search team remained with Gooden, two officers went down a set of stairs and into the basement of the building.

In the basement, the officers encountered Taylor, sitting in a barber's chair and wearing a black plastic apron over his torso. The police observed Mahone cutting Taylor's hair. The basement contained one other barber's chair and some hair-cutting equipment.

After the officers announced their presence, Officer Richard Scott Adams (Officer Adams) noticed Taylor's hands moving underneath the plastic apron. Fearing that Taylor could be reaching for a weapon, Officer Adams removed the apron and

patted the exterior of Taylor's pocket. Officer Adams felt a hard object and removed it from Taylor's pocket. The object was a plastic prescription bottle, which appeared to contain crack cocaine.

After arresting Taylor and placing him in handcuffs, Officer Adams searched Mahone. Officer Adams did not find anything incriminating on Mahone. Then, Officer Adams handcuffed Mahone, while Constable Gordon McIntyre (Constable McIntyre) searched two coats, which were draped on a chair ten feet from Taylor and Mahone. Constable McIntyre discovered additional pieces of crack in Taylor's coat and several baggies containing marijuana in Mahone's coat.

The police charged both Taylor and Mahone with possession of a controlled substance[1] and possession of a controlled substance with intent to deliver.[2] Both men filed motions to suppress the evidence seized from them, which the suppression court granted. The court held that, while the warrant for the search of the convenience store had been valid, the searches of Taylor and Mahone had exceeded the scope of the warrant.

The Commonwealth certified in good faith that the suppression of the evidence terminated or substantially handicapped its prosecution, and appealed to the Superior Court. See 42 Pa.C.S. § 934; Pa.R.A.P. 311(d). In a fragmented memorandum opinion, the Superior Court reversed the suppression of the evidence. Writing for the court, Judge, now Justice, Saylor concluded that the search of the basement barbershop had been outside the scope of the warrant, however, the search could be justified as a legitimate protective sweep of the premises in conjunction with the arrest of Gooden. Judge Olszewski filed a concurring opinion in which he disagreed that the search of the basement could be justified as a protective sweep. In his view, the search of the basement had been lawful because the barbershop is open to the public, and therefore Taylor and Mahone did not have a reasonable

1. The Controlled Substance, Drug, Device and Cosmetic Act, Act of April 14, 1972, P.L. 233, as amended, 35 P.S. § 780–113(a)(16).

2. 35 P.S. § 780–113(a)(30).

expectation of privacy in the basement. Judge Popovich dissented and stated that he would have affirmed based on the reasoning of the suppression court. We granted Petitions for Allowance of Appeal filed by Taylor and Mahone to consider whether the searches conducted in the basement were beyond the scope of the warrant, and if so, whether such searches were reasonable under the Fourth Amendment.

## DISCUSSION

■■■ When the Commonwealth appeals an order suppressing evidence, we apply the following standard of review:

[W]e consider only the evidence of the defendant's witnesses and the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. We are bound by the [suppression] court's findings of fact if they are supported by the record, but we must examine any legal conclusions drawn from those facts.

*Commonwealth v. Pickron,* 535 Pa. 241, 634 A.2d 1093, 1096 (1993). With this standard in mind, we will first examine whether the searches conducted in the basement were within the scope of the search warrant.

### Scope of the Warrant

■■ Both lower courts found that the search of the basement of the convenience store fell outside the scope of the warrant. The Superior Court concluded that because Gooden and the G–Service Convenience Store, not the basement, were the targets of the police investigation, the search of the basement exceeded the scope of the warrant. Super. Ct. Op., at 5. Thus, the Superior Court agreed with the suppression court that prior to the execution of the warrant and the entry into the building by the police, the Duquesne Police Department lacked probable cause to search the basement. We agree.

■■ The Warrant Clause of the Fourth Amendment to the United States Constitution prohibits the issuance of any warrant unless based upon "probable cause, supported by Oath or

affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend IV. The scope of a lawful search pursuant to a warrant is "defined by the object of the search and the places in which there is probable cause to believe that it may be found." *Maryland v. Garrison*, 480 U.S. 79, 84, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987); *Commonwealth v. Kiessling*, 380 Pa.Super. 442, 552 A.2d 270, 272 (1988), *allocatur denied*, 522 Pa. 602, 562 A.2d 825 (1989).

In the present case, the police possessed a valid warrant to search the G–Service Convenience Store. The warrant described the place to be searched as:

418 Crawford Ave[.] Duquesne[,] PA 15110—Corner of Crawford & 5th Street—2 story White Brick. A white sign is above the entrance labled (sic) "G–Service Convenience Store["] & 2 phone numbers 466–1071 and 466–1061 painted in red (also a picture of a car on the sign)[.]

Search Warrant (R.R. 17a). The affidavit of probable cause repeatedly emphasized that the investigation and surveillance focused on the G–Service Convenience Store and did not mention the basement barbershop. Application for Search Warrant and Affidavit of Probable Cause (R.R. 17a–19a). While the barbershop was located in the same building as the convenience store, the suppression court found the barbershop to be a separate and distinct facility from the convenience store. The record, which contains evidence that the basement housed only barbershop equipment and activity, sufficiently supports the finding of the suppression court. Because the barbershop existed as a separate facility from the convenience store and the police did not have probable cause to believe that drug activity had occurred in the barbershop, the basement barbershop fell outside the scope of the warrant issued to search the convenience store.

### Protective Sweep

While the search of the basement extended beyond the scope of the warrant, this search may nonetheless be justified under the Fourth Amendment. The Commonwealth asserts,

and the Superior Court agreed, that the police entered the basement as part of a legitimate protective sweep. The Superior Court noted that while it is unclear from the record whether there was a door that physically separated the first floor of the convenience store from the basement, the record did show that persons entering the store could pass freely between the first floor and the basement. Given the possibility that the police may have reasonably believed that other individuals were on the premises who could threaten the officers' safety, the Superior Court found that the officers properly conducted a protective sweep of the basement after arresting Gooden. We agree.

■ Not every search must be conducted pursuant to a warrant, for the Fourth Amendment bars only unreasonable searches and seizures. *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 652, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995). While a search is generally not reasonable unless executed pursuant to a warrant, the Supreme Court of the United States and this Court have recognized exceptions to the warrant requirement. *See, e.g., Colorado v. Bertine*, 479 U.S. 367, 371–72, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987) (inventory search); *New York v. Burger*, 482 U.S. 691, 702–03, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987) (administrative search of a closely regulated business); *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (pat-down frisk); *Commonwealth v. Miller*, 555 Pa. 354, 724 A.2d 895, 900 (1999), *cert. denied*, 528 U.S. 903, 120 S.Ct. 242, 145 L.Ed.2d 204 (1999) (emergency situation); *Commonwealth v. Morris*, 537 Pa. 417, 644 A.2d 721, 723–24 (1994), *cert. denied*, 513 U.S. 1031, 115 S.Ct. 610, 130 L.Ed.2d 519, (1994) (protective search). One well-recognized exception to the warrant requirement is the protective sweep.

■ A protective sweep is "a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." *Maryland v. Buie*, 494 U.S. 325, 327, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990). *Buie* sets forth two levels of protective sweeps. *Id.* at 334, 110 S.Ct. 1093. The two levels are defined thus:

[A]s an incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched. Beyond that, however, we hold that there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.

*Id.* Pursuant to the first level of a protective sweep, without a showing of even reasonable suspicion, police officers may make cursory visual inspections of spaces immediately adjacent to the arrest scene, which could conceal an assailant. The scope of the second level permits a search for attackers further away from the place of arrest, provided that the officer who conducted the sweep can articulate specific facts to justify a reasonable fear for the safety of himself and others.

We have recognized the exigency created by the existence of hidden third parties during an arrest. *See Commonwealth v. Norris*, 498 Pa. 308, 446 A.2d 246, 249 (1982). In *Norris*, we upheld, as a search incident to an arrest, an inspection of a bedroom that resulted in the discovery of a knife visible in plain view. *Id.* In light of *Buie*, this "search" is best designated anew as a protective sweep because the goal was to protect the officers in *Norris* from third parties.

In *Norris*, the police conducted a warrantless arrest of a suspect wanted for the rape of a young girl at knifepoint. After the police detained the suspect in the living room of his apartment, two officers swept through his bedroom and seized a knife in plain view. As justification for the protective sweep, we found that "the police had every reason to believe a firearm was available to the occupants of the apartment and that one of its usual occupants, appellant's brother, whom appellant had implicated in his threats of harm to the victim, was unaccounted for in the living room." 446 A.2d at 249. We held that, incident to the arrest, the police had authority

for the purpose of ensuring their own safety to enter other areas from where they might anticipate danger.[3] *Id.* at 250.

■ Like the officers in *Norris,* the officers in the present case conducted a valid protective sweep. To decide whether the facts justified a protective sweep, the reviewing court must consider all of the facts objectively and from the position of the reasonably prudent police officer. *Buie,* 494 U.S. at 327, 110 S.Ct. 1093. Because the sweep in the present case extended beyond the area within the immediate vicinity of the arrest, there must be "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.* at 334, 110 S.Ct. 1093.

Based on the facts in the record and the inferences taken from them, we conclude that the police carried out a proper protective sweep. Officer Adams, one of the two police officers involved in the sweep, testified that a few minutes before he went into the building, he had observed both Taylor and Mahone enter the convenience store on the first floor. N.T. 12/18/96 (Suppression Hearing), at 67–68 (R.R. 86a–87a). Chief Richard Stevens Adams (Chief Adams) recalled that he observed four people in the first floor when the police entered the building; neither Taylor nor Mahone was one of the visible people. N.T. 12/18/96 (Suppression Hearing), at 42–43 (R.R. 61a). The concern for the safety of the officers was best expressed by Officer Adams who testified that, when he saw that the other officers were with Gooden, his "first instinct was to go downstairs to secure that area down there." N.T. 12/18/96 (Suppression Hearing), at 75 (R.R. 94a). None of the officers recalled any door separating the first floor and the basement, *See* N.T. 12/18/96 (Suppression Hearing), at 56, 69, 79 (R.R. 75a, 88a, 98a), and Chief Adams stated undeniably that the only access to the first floor was from the front door and the basement. N.T. 12/18/96 (Suppression Hearing), at 56 (R.R. 75a). At the direction of one of the officers, Officer

---

**3.** *Norris, supra,* is devoid of facts to indicate the exact proximity of the bedroom to the living room.

Adams and Constable McIntyre proceeded down the steps of the basement.

Clearly, there are specific and articulable facts, which "when taken together with the rational inferences from those facts," would give the police reasonable concerns for their safety. Here, after extensive surveillance and probable cause of illegal activity, the police entered a building to search for narcotics. Once inside the convenience store, the police apprehended Gooden and located a large quantity of a controlled substance but could not confirm the whereabouts of two individuals who had just entered. As the only accessible area adjoining the first floor, the basement provided a logical hiding place for Taylor and Mahone. The police entered the basement under a reasonable belief that third parties were present and could pose a threat to them, therefore exigent circumstances legally justified the protective sweep of the basement.

Because the scope of a protective sweep extends only to a visual inspection of those places in which a person might be hiding and lasts no longer than is necessary to dispel the fear of danger, *Buie*, 494 U.S. at 335, 110 S.Ct. 1093, *Commonwealth v. Crouse*, 729 A.2d 588, 592 (Pa.Super.1999), *allocatur denied* 560 Pa. 738, 747 A.2d 364 (1999), we address the validity of the searches of Taylor and the two coats.

### Search of Taylor

The Superior Court held that once the police officers entered the basement, they were justified in searching Taylor for a potential weapon. Because Taylor began moving his hands under the barber's apron, the court concluded that the officer could have reasonably suspected that Taylor might be armed and dangerous. We agree.

A police officer may conduct a quick frisk for weapons if he or she reasonably fears that the person with whom he or she is dealing may be armed and dangerous. *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Commonwealth v. Hicks*, 434 Pa. 153, 253 A.2d 276, 279 (1969). "The officer need not be absolutely certain that

the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or the safety of others was in danger." *Terry*, 392 U.S. at 27, 88 S.Ct. 1868. The existence of reasonable suspicion to frisk an individual must be judged in light of the totality of the circumstances confronting the police officer. *United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); *In the Interest of D.M.*, 556 Pa. 160, 727 A.2d 556, 557 (1999).

In light of the totality of the circumstances in the instant case, Officer Adams reasonably suspected that Taylor could be armed and dangerous. Officer Adams and Constable McIntyre discovered Taylor and Mahone while conducting a protective sweep subsequent to the arrest of Gooden and the discovery of a large quantity of crack cocaine. After announcing their presence, the officers told Taylor and Mahone not to move. N.T. 12/18/96 (Suppression Hearing), at 61 (R.R. 80a). Taylor fumbled under the black barber's apron and reached for his pocket. N.T. 12/18/96 (Suppression Hearing), at 61–62 (R.R. 80a–81a). Despite Officer Adams' repeated warnings not to move, Taylor continued to stir under the apron. N.T. 12/18/96 (Suppression Hearing), at 62 (R.R. 81a). To protect his safety and the safety of the other individuals in the basement, Officer Adams justifiably touched Taylor's pocket to determine if Taylor had a weapon.

▇▇▇ Taylor argues that even if the pat-down of his outer-clothing was reasonable, Officer Adams had no basis for removing the pill bottle from Taylor's pocket. Because Officer Adams knew that Taylor did not possess a weapon and could not be certain that the bottle was contraband, Taylor maintains that this evidence should be suppressed. The Superior Court concluded that Office Adams felt what he reasonably believed to be a weapon in Taylor's pocket; therefore, Officer Adams justifiably reached into Taylor's pocket. We agree with the Superior Court and find the seizure of the pill bottle to be constitutional.

As noted above, the purpose of a frisk under *Terry* is not to discover evidence, but to allow the officer to pursue his investigation without fear for his or her safety. *See Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Commonwealth v. E.M.*, 558 Pa. 16, 735 A.2d 654, 661 (1999). In keeping with that purpose, the scope of a *Terry* frisk is limited to that which is necessary for the discovery of weapons. *Terry*, 392 U.S. at 26, 88 S.Ct. 1868; *Commonwealth v. Stevenson*, 560 Pa. 345, 744 A.2d 1261, 1264 (2000). Therefore, in order to reach into a suspect's pocket during a frisk, the officer would have to feel something that reasonably appears to be a weapon.[4]

We dealt with the search of a defendant's pocket and the seizure of a bottle in *Commonwealth v. Graham*. *See* 554 Pa. 472, 721 A.2d 1075 (1998). In *Graham*, Officer Dawley had been on patrol alone, late at night, when he confronted three individuals. In order to effectuate an arrest of one of the individuals, Officer Dawley had to turn his back on the defendant, whom Officer Dawley noticed had a bulge in the front pocket of his pants. Officer Dawley patted the bulge and concluded that it was money. Then, Officer Dawley patted the defendant's back pockets and felt what he believed to be a Lifesavers Holes bottle. Officer Dawley shined a flashlight down into the pocket and discovered a Lifesavers Holes container full of crack cocaine.

In examining the search of the defendant, we concluded that Officer Dawley had been reasonable in initiating a frisk of the defendant for weapons. *Graham*, 721 A.2d at 1077. This Court went on to find that Officer Dawley had exceeded the scope of a valid *Terry* frisk by continuing to search after he

---

4. We need not analyze whether the officer justifiably put his hand into Taylor's pocket under the "plain feel exception." Under the "plain feel exception," an officer may confiscate a non-threatening object if it becomes immediately apparent that it is contraband during a legitimate *Terry* frisk. *Minnesota v. Dickerson*, 508 U.S. 366, 375–76, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). In the present case, Officer Adams reached into Appellant Taylor's pocket under the reasonable belief that the hard object in Taylor's pocket was a weapon, and not contraband. Therefore, we utilize the principles of *Terry* and not those of *Dickerson* to analyze the validity of this search.

had ascertained that the defendant was not armed and dangerous. *Id.* at 1078.

Unlike the officer in *Graham*, Officer Adams in the present case did not exceed the scope of a proper *Terry* frisk. In *Graham*, Officer Dawley ascertained that the defendant was not armed and dangerous and continued to search. In addition, Officer Dawley recognized the hard object in the defendant's back pocket as a candy bottle, but shined his flashlight into the defendant's pocket anyway. Here, Officer Adams placed his hand on the object in Appellant Taylor's pocket. N.T. 12/18/96 (Suppression Hearing), at 62–63 (R.R. 81a–82a). Officer Adams testified that the object was hard and about four inches long. N.T. 12/18/96 (Suppression Hearing), at 71 (R.R. 90a). While Officer Adams concluded that the object was not a gun or knife, he testified that he still feared that the object could have been some type of weapon. N.T. 12/18/96 (Suppression Hearing), at 673, 76 (R.R. 92a, 95a).

We find that Officer Adams reasonably concluded that Taylor may have been armed even after the officer had touched the pocket. Officer Adams had been involved in the investigation of the drug trafficking in the convenience store. Moments before the search team carried out the search of the store, Officer Adams had observed Taylor enter the store and then found Taylor in the basement. Immediately after encountering police, Taylor reached for his pocket, despite being told not to move several times. After observing Taylor fumble under the black barber's apron, Officer Adams touched Taylor's pocket. Officer Adams felt a hard, cylinder-type object. Because an officer need only be reasonably, and not absolutely, certain that an individual is armed in order to investigate for weapons, we conclude that Officer Adams was reasonable in suspecting that Taylor could be armed and dangerous. Therefore, Officer Adams justifiably reached into Taylor's pocket in order to protect his safety and the safety of others in the basement.

After Officer Adams discovered that the object in Taylor's pocket was a prescription bottle that apparently contained crack cocaine, he placed Taylor under arrest. Pursuant to

Taylor's arrest, Constable McIntyre searched two coats, which were ten feet from Taylor. We now address the validity of this search.

## Search of Coats

Both Taylor and Mahone challenge the legality of the search of the coats found in the basement. Taylor and Mahone assert that the search of the coats exceeded the scope of a search incident to arrest.[5] The Superior Court upheld the search of the coats because it concluded that the coats could have contained either contraband or weapons. While the coats did contain contraband, we find that the circumstances in the present case did not necessitate a search of the coats. We reverse.

The Supreme Court of the United States and this Court have held that the scope of a search incident to arrest extends not only to the arrestee's person, but also into the area within the arrestee's "immediate control." *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *Commonwealth v. Shiflet*, 543 Pa. 164, 670 A.2d 128, 130 (1995). While the breadth of the area that falls within the arrestee's "immediate control" has been the subject of much debate,[6] a warrantless search must be "strictly circumscribed

5. The validity of a warrantless search incident to arrest rests upon the legality of the arrest. *Michigan v. DeFillippo*, 443 U.S. 31, 36, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979); *Commonwealth v. Williams*, 390 Pa.Super. 493, 568 A.2d 1281, 1283 (1990). Taylor does not contest the validity of his arrest for drug possession after Officer Adams found what he reasonably believed to be crack cocaine in Taylor's pocket. Therefore, we address only whether Constable McIntyre exceeded the scope of a search incident to arrest by examining the contents of the two coats.

6. *See New York v. Belton*, 453 U.S. 454, 462, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981)(holding a search of the passenger compartment of an automobile and any containers contained therein following a lawful arrest is valid, despite the fact that the arrestee is outside of the car); *Chimel*, 395 U.S. at 752, 89 S.Ct. 2034 (holding that a forty-five minute search of an arrestee's entire home is invalid because it extended beyond the area in which arrestee might have obtained a weapon or destructible evidence); *U.S. v. Abdul–Saboor*, 85 F.3d 664, 670 (D.C.Cir.1996)(holding search of containers in bedroom incident to arrest is valid, even though arrestee was handcuffed and seated outside

by the exigencies which justify its initiation." *Mincey v. Arizona,* 437 U.S. 385, 393, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); *Commonwealth v. Wright,* 560 Pa. 34, 742 A.2d 661, 665 (1999), *reconsideration denied* (February 25, 2000). The two historical rationales for the search incident to arrest exception to the warrant requirement are (1) the need to disarm the suspect in order to take him into custody and (2) the need to preserve evidence for later use at trial. *Knowles v. Iowa,* 525 U.S. 113, 116, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998). In the present case, we believe that the search of the two coats extended beyond the area within Taylor's "immediate control" and was therefore invalid.

We find the Fifth Circuit's decision in *United States v. Johnson* to be instructive. 16 F.3d 69 (5th Cir.1994). In *Johnson,* police obtained an arrest warrant for the defendant for his alleged theft and money laundering activities as an employee with the City of Austin. The police executed the warrant at the defendant's place of employment. When the police entered the defendant's office, they found the defendant alone and sitting at his desk. After informing the defendant that he was under arrest, the police officers told him to sit down at his desk. While the defendant stood several times, the police did not place him in handcuffs. Officer Ron Sterrett (Officer Sterrett) searched a briefcase lying closed and approximately eight feet from the defendant. Officer Sterrett also searched the top of the defendant's desk. Throughout the search by Officer Sterrett, one officer had remained behind the defendant, while three other officers stood in the office and watched him.

The Fifth Circuit Court of Appeals agreed with the defendant that the search of his briefcase had exceeded the scope of a search incident to arrest. *Johnson,* 16 F.3d at 71–72. Because the defendant sat surrounded by several officers and at least eight feet away from his briefcase while Officer

bedroom, because arrestee had previously attempted to retrieve gun from bedroom); *U.S. v. Johnson,* 16 F.3d 69, 72 (5th Cir.1994)(holding warrantless search of briefcase is invalid because briefcase was six feet from arrestee and out of arrestee's reach).

158

Sterrett searched it, the court held that the briefcase had not been within the defendant's immediate control. *Id.* at 72. The court noted that Officer Sterrett had no reason to believe that Johnson possessed a weapon or was about to destroy evidence within his reach, therefore the search could not be justified as a search incident to arrest. *Id.* Finally, the court held that papers found on top of the defendant's desk had been within the defendant's reach. *Id.* The court of appeals declined to suppress the papers because the papers had been seized as evidence within the defendant's immediate control during a search incident to arrest. *Id.*

■ Like the briefcase in *Johnson,* the two coats in the present case were not within Taylor's immediate control. While we recognize that the search in the present case occurred in the basement of a convenience store and not an office building as in *Johnson,* we believe that this is a distinction without a difference. Similar to *Johnson,* the police in the present case had secured the scene prior to searching the coats. After Officer Adams had patted-down Taylor's clothing for weapons and had arrested Taylor, he placed Taylor in handcuffs. N.T. 12/18/96 (Suppression Hearing), at 62–65 (R.R. 81a—84a). Then, Officer Adams directed Taylor to sit in the barber's chair. N.T. 12/18/96 (Suppression Hearing), at 67 (R.R. 86a). Taylor complied and sat in the chair with his wrists in handcuffs. N.T. 12/18/96 (Suppression Hearing), at 67 (R.R. 86a). Officer Adams also *Terry* frisked and handcuffed Mahone, who stood next to the chair. N.T. 12/18/96 (Suppression Hearing), at 67 (R.R. 86a). Then, Officer Adams stood with the two handcuffed men and directed Constable McIntyre to search the coats. N.T. 12/18/96 (Suppression Hearing), at 79–80 (R.R. 98a–99a). Like the briefcase in *Johnson,* the two coats were located ten feet from Taylor and Mahone, well beyond either man's reach. N.T. 12/18/96 (Suppression Hearing), at 80 (R.R. 99a). Neither Taylor nor Mahone made any movements toward the coats. There is no indication in the record that the police had any reason to believe that the men would immediately attempt to secure a weapon or destroy contraband contained in the coats. While

it is not clear if Officer Adams knew who owned the coats before he directed the search, Officer McIntyre testified that he did not know to whom the coats belonged prior to searching. N.T. 12/18/96 (Suppression Hearing), at 68, 78, 80 (R.R. 87a, 97a, 99a). The mere possibility that a search, conducted simultaneously with an arrest, may uncover some hidden evidence is not sufficient to permit such a search. We find that the two coats were beyond Taylor's immediate control, and therefore could not be searched incident to his arrest.

Our Court is sympathetic to the dangers and uncertainties that police officers confront while making custodial arrests. A warrantless search, however, is limited by the exigencies that necessitate its initiation and we do not believe that the officers needed to search the coats in order to ensure their safety or to prevent the destruction of evidence. Thus, we reverse the Superior Court and find that the evidence obtained from the search of the coats should have been suppressed.

## CONCLUSION

We conclude that the police officers entered the basement barbershop during a protective sweep, Officer Adams conducted a valid *Terry* frisk of Taylor, and Officer Adams legally confiscated the pill bottle from Taylor. Therefore, we affirm the Order of the Superior Court reversing the suppression of the pill bottle and its contents. However, we conclude that the search of the coats exceeded the scope of a search incident to arrest. Accordingly, we reverse the Superior Court's Order reversing the suppression of evidence found in the coats and remand for further proceedings.

Justice NIGRO files a concurring and dissenting opinion in which Chief Justice FLAHERTY and Justice ZAPPALA join.

Justice SAYLOR did not participate.

NIGRO, Justice, Concurring and Dissenting.

I agree with the opinion announcing the judgment of the court ("opinion of judgment") that the search of the basement exceeded the scope of the warrant for the G Service Conve-

160

nience Store. Unlike the opinion of judgment, however, I do not believe that the search of the basement was justified as a legitimate protective sweep and therefore, I must also respectfully dissent.

The government bears a heavy burden of proving that a warrantless search was constitutional. *United States v. Jeffers*, 342 U.S. 48, 51, 72 S.Ct. 93, 96 L.Ed. 59 (1951); *United States v. Brightwell*, 563 F.2d 569, 574 (3rd Cir.1977). As the opinion of judgment notes, in *Maryland v. Buie*, 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990), the United States Supreme Court held that an arresting officer may only conduct a warrantless protective sweep of areas beyond the immediate scene of an arrest if the officer possesses a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably justify the officer in believing that the areas harbor an individual posing a danger to the officer or others. *Id.* at 327, 110 S.Ct. 1093.[1] "[W]hile officers need not have probable cause to believe a dangerous third person is present, the mere possibility of such a presence is not enough [to justify a protective sweep]. Instead, police must have specific and articulable grounds sufficient to support a reasonable belief that a person posing a danger is present." *Hayes v. Nevada,* 106 Nev. 543, 551, 797 P.2d 962, 967–69 (1990). Blanket sweep searches of premises following the arrest of someone inside the premises are patently unconstitutional. Thus, courts reviewing suppression motions must carefully review the reasons given by police officers for conducting protective sweeps so that officers do not engage in warrantless sweep searches as a pretext for substantive searches. *See id.*, 797 P.2d at 967–69; *United States v. Colbert*, 76 F.3d 773, 778 (6th Cir.1996) (allowing police to conduct a protective sweep because they do not know whether or not another person may be in the home not only creates an incentive for police to remain ignorant of who is in the home in order to be able to conduct a protective sweep, but also is contrary to the requirement in *Buie* that the

1. This is the standard for a second level search, as described by the opinion of judgment.

police have an articulable basis to support their reasonable
suspicion of danger in the areas to be swept).

In my view, the Commonwealth failed to present specific
and articulable facts in the instant case that demonstrate that
the police officers reasonably believed that there were individ-
uals in the basement who posed a danger to them.[2]  I also
agree with Judge Olszewski's concurring opinion that no such
reasons are present in the record.  *See* Super. Ct. Op. at 2
(Olszewski, J., concurring) (nothing in suppression court's
findings indicates that following arrest of Gooden, the officers
had reasonable fear of a threat to their well-being).  The
opinion of judgment notes that Officer Adams testified that his
first instinct was to go downstairs in order to secure the
basement.  However, Officer Adams never articulated why he
felt the need to secure the basement, much less offered any
specific facts as to why he reasonably believed there were
persons present in the basement who posed a danger to him
or the other officers.  Although Officer Adams stated that he
saw Taylor and Mahone go into the convenience store prior to
the search, he did not further elucidate that he believed that
they were in the basement when he entered the convenience
store [3] or that he had reason to believe that either Taylor or

2.  The opinion of judgment picks out a few isolated statements made by
various Commonwealth witnesses and concludes that based on these
statements, the officers involved in the search of the convenience store
must have feared that dangerous third parties were located in the
basement.  However, none of the Commonwealth's witnesses testified
that they suspected potentially dangerous third parties in the basement.
Rather, the Commonwealth's witnesses explained that they entered the
basement simply because it was easily accessible to the convenience
store.  Moreover, in its argument to this Court, the Commonwealth
does not rely on the witnesses' statements cited by the opinion of
judgment but rather, only argues that the search was a legitimate
protective sweep due to the possibility that other individuals may have
been present in the basement because of its accessibility from the
convenience store.  Thus, based on my reading of the record and the
argument framed by the Commonwealth, I disagree with the opinion of
judgment that the Commonwealth presented the specific and articula-
ble facts necessary to satisfy its burden of proving that the warrantless
search of the basement was a legitimate protective sweep.  *See Buie*,
494 U.S. at 327, 110 S.Ct. 1093; *Jeffers*, 342 U.S. at 51, 72 S.Ct. 93.

3.  According to the record, Officer Adams immediately searched the
basement upon entering the convenience store.  There is no evidence

Mahone posed a danger to him. Given this testimony, I simply cannot agree with the opinion of judgment that Officer Adams conducted a constitutional protective sweep since the search was based on no more than the mere possibility that dangerous third parties may have been present in the basement. *See Hayes*, 106 Nev. at 551, 797 P.2d at 967.[4]

Therefore, since I believe that the Commonwealth failed to present specific and articulable facts necessary to justify a protective sweep, I would reverse the Superior Court's order denying Appellants' motions to suppress the evidence obtained by the officers from the basement. *See United States v. Akrawi*, 920 F.2d 418, 420–21 (6th Cir.1990) (protective sweep of second floor following arrest on first floor was unconstitutional where agents could not articulate a specific basis for fear that second floor harbored dangerous persons and agents encountered no violence or resistance in entering home).[5]

Chief Justice FLAHERTY and Justice ZAPPALA join in the concurring and dissenting opinion.

that Officer Adams took note of the people present in the convenience store and determined that Taylor and Mahone were missing.

4. Contrary to the opinion of judgment, I also believe that this case is distinguishable from *Commonwealth v. Norris*, 498 Pa. 308, 446 A.2d 246 (1982). In *Norris*, this Court upheld the police officers' sweep of the appellant's bedroom after the officers arrested appellant in his living room because the officers had "every reason to believe" that a firearm was available to the occupants of the apartment and that one of the usual occupants of the apartment, the appellant's brother, was unaccounted for. *Id.* at 315, 446 A.2d at 249; *see also, Commonwealth v. Curry*, 343 Pa.Super. 400, 494 A.2d 1146 (1985) (police properly conducted a protective sweep of home because a dangerous shooting incident had just occurred and the gun was not yet accounted for). Here, neither Officer Adams nor Constable McIntyre testified that they recognized that Taylor and Mahone were unaccounted for when they entered the convenience store or that they had reason to believe that Taylor and Mahone possessed weapons or otherwise posed a threat to them.

5. As I would hold that the officers were not justified in searching the basement, I would also necessarily hold that the officers improperly searched Taylor and the coats hanging in the basement. However, even if I believed that the officers were warranted in conducting a protective sweep of the basement, I disagree with the opinion of judgment that Officer Adams' seizure of the pill bottle from Taylor was constitutional. In my view, although Officer Adams may have had

reasonable suspicion to frisk Taylor in order to insure that he was not armed, once Officer Adams patted Taylor's pocket and felt a cylinder object of approximately four inches in length and one and three-quarters in diameter, which he determined was neither a gun nor a knife, Officer Adams was not constitutionally justified in further searching Taylor's pocket and seizing the pill bottle. *See Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Commonwealth v. E.M.*, 558 Pa. 16, 26–28, 735 A.2d 654, 660–61 (1999).

I agree with the opinion of judgment that Constable McIntyre's search of the coats was not a proper search incident to arrest and thus, the Superior Court's order suppressing the evidence obtained from the coats should be reversed.