J-S20041-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 2579 EDA 2016 |
| WARREN HAND, | : | |
| | : | |
| Appellee | | |

Appeal from the Order July 13, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0012187-2015

BEFORE: BOWES, J., OTT, J. and FORD ELLIOTT, P.J.E.

MEMORANDUM BY OTT, J.: **FILED NOVEMBER 27, 2017**

This is a Commonwealth appeal from the order entered July 13, 2016, in the Philadelphia County Court of Common Pleas, granting the pretrial motion of appellee, Warren Hand, to suppress evidence recovered during an illegal search.[1] When this appeal first appeared before the panel, we determined the trial court erred in concluding the investigating officer's minimally intrusive act of moving aside drapes so that he could look inside a residence, violated Hand's constitutional rights. *See Commonwealth v. Hand*, ___ A.3d ___, 2017 WL 3142408, *5 [2579 EDA 2016] (Pa. Super.

_____

[1] Pursuant to Pennsylvania Rule of Appellate Procedure 311(d), the Commonwealth properly certified in its notice of appeal that the order "terminates or substantially handicaps the prosecution." Notice of Appeal, 8/4/2016. *See* Pa.R.A.P. 311(d).

2017) (unpublished memorandum). Nevertheless, we remanded so the trial court could make additional findings as to whether the officer's subsequent search of a bedroom constituted a permissible protective sweep. ***See id.*** at *6. The trial court complied with our directive and filed a supplemental opinion, in which it concluded the officer's warrantless search of the bedroom was illegal. ***See*** Supplemental Opinion, 8/25/2017, at 3. For the reasons below, we now affirm the order of the trial court granting Hand's suppression motion.

We recounted the facts underlying Hand's conviction in our prior memorandum as follows:

> On June 19, 2015, at about 12:10 a.m., Philadelphia Police Officer James Crown and his partner, Officer [Donald] Vandemay, were on patrol in the Kensington section of Philadelphia for the purpose of preventing gun violence. The officers responded to a radio call directing them to go to 3462 Frankford Avenue to investigate a report of a disturbance involving a person with a gun.

> Upon arrival, the front door to the property was open but was immediately shut. Officer Crown heard males yelling inside the property and observed drapes blowing out of a broken window. Officer Crown attempted to open the front door but it was locked. Thereafter, he walked up to the broken window, reached inside the property and moved the drapes which allowed him to observe [Hand] and a Nasir Lewis standing by a bedroom door. [Hand] was observed with a semi-automatic gun in his hand. Officer Crown announced his presence at which time [Hand] looked in the officer's direction, retreated into the bedroom and slammed shut the bedroom door. The other male was directed to exit the property at which time he was taken into custody.

> Officer Crown then went inside the property and opened the bedroom door. [Hand] was removed from the bedroom and taken into custody by officers assisting Officers Crown and Vandemay. Officer Crown then went back inside the bedroom and performed

- 2 -

a search of the closet [where] he recovered a loaded .380 caliber Bersa semiautomatic firearm. Police seized the weapon, took it outside and observed a bullet lying on the steps to the residence matching the bullets inside the seized firearm.

While at the property, [the o]fficer came in contact with a woman named Geisel Duarte sitting on the steps leading into the property. She stated that Lewis had "trashed" her house.

When Lewis was asked where he lived, he gave the address to the property. [Hand] gave an address in Southwest Philadelphia. Officer Crown did not know what the argument was about, and did not know if anyone was hurt inside the residence.

[Hand] testified that he was staying at the first floor residence with Lewis for several months before June 19, 2015. He stated that he developed a relationship with Ms. Duarte, who lived on the second floor of the residence. [Hand] testified that sometimes he would stay in her apartment with her.

*Hand*, *supra*, 2017 WL 3142408, at *1–2 (citation omitted).

After Hand was charged with one count of persons not to possess firearms,[2] he filed a pretrial motion seeking suppression of the evidence, based on the allegation that the firearm was recovered during an illegal search. Following a suppression hearing, the trial court granted Hand's motion, and this Commonwealth appeal followed.

As noted above, we previously concluded Officer Crown acted properly when he "'momentarily brush[ed] aside a curtain flapping in the wind' through a smashed window to ensure 'no one inside was in imminent danger.'" *Id.* at *2 (citation omitted). Therefore, the only issue before us is whether, as the Commonwealth asserts, the subsequent search of the bedroom constituted a

_____

[2] *See* 18 Pa.C.S. § 6105(a)(1).

permissible protective sweep for other possible assailants or victims. **See** Commonwealth's Brief at 12.

We reiterate our well-established standard of review:

When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

**Commonwealth v. Vetter**, 149 A.3d 71, 75 (Pa. Super. 2016) (quotation omitted), *appeal denied*, ___ A.3d ___, 2017 WL 2588277 (Pa. 2017). Furthermore, we emphasize: "[O]ur standard of review is highly deferential with respect to the suppression court's factual findings and credibility determinations." **In re L.J.**, 79 A.3d 1073, 1080 n.6 (Pa. 2013).

"A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others[,]" which is "narrowly confined to a cursory visual inspection of those places in which a person might be hiding." **Maryland v. Buie**, 494 U.S. 325, 327 (1990). **See Commonwealth v. Taylor**, 771 A.2d 1261 (Pa. 2001)

(approving of protective sweep under **Buie**),[3] *cert. denied*, 534 U.S. 994

(2001).  This Court has interpreted **Buie** as approving two levels of protection:

> Pursuant to the first level of a protective sweep, without a showing of even reasonable suspicion, police officers may make cursory visual inspections of spaces immediately adjacent to the arrest scene, which could conceal an assailant.  The scope of the second level permits a search for attackers further away from the place of arrest, provided that the officer who conducted the sweep can articulate specific facts to justify a reasonable fear for the safety of himself and others.

**Commonwealth v. Potts**, 73 A.3d 1275, 1281–1282 (Pa. Super. 2013)

(quotation omitted), *appeal denied*, 83 A.3d 415 (Pa. 2013).  Therefore, the

question in the present case is whether Officer Crown articulated specific facts

to substantiate a reasonable fear for the safety of himself or others to justify

his re-entry into the apartment after both Hand and Lewis were detained

outside.

In its supplemental opinion, the trial court found Officer Crown's re-

entry into the apartment was illegal:

> Here, the re-entry of the house and the search of the bedroom clearly did not fit within the "first level" described above because [Hand] and Lewis were in custody outside the property.  They no longer posed a threat to the officers and others present at the time and the bedroom and the closet were not locations from which [Hand] or Lewis could launch an attack or obtain a

---

[3] Although **Taylor** was a plurality decision, both the opinion announcing the judgment of the court ("OJAC") and the concurring and dissenting opinion applied the two levels of protection announced in **Buie**, albeit to different results.  **See Taylor**, **supra**, 771 A.2d at 1273 (OAJC by Newman J. finding protective sweep of basement valid), and at 1274-1275 (concurring and dissenting opinion by Nigro, J. finding Commonwealth "failed to present specific and articulable facts necessary to justify a protective sweep").

weapon given that neither man was in close proximity to those locations.

Under the "second" level, Officer Crown was not justified in re-entering the residence and walking into the bedroom because he did not articulate specific facts to justify a reasonable belief that someone was in the bedroom who posed a danger to the police or others. According to Officer Crown, he re-entered the house and the bedroom "to check the bedroom to secure it for any other people that are in there." The officer, however, had no basis to do so because when he moved the curtain and looked into the residence, he only saw [Hand] and Lewis enter the bedroom and only [Hand] and Lewis exited the bedroom when he ordered those inside to exit it. There was no evidence presented indicating that anyone else was inside the bedroom or that, if there was, that person or persons posed a threat to the police or others. Thus, because both [Hand] and Lewis were in custody outside the residence and there was no evidence presented indicating that someone who posed a threat may have been in the bedroom, there was no remaining exigency that could justify the general exploratory search of the bedroom.

Supplemental Opinion, 8/25/2017, at 3 (record citation omitted).

Our review of the record reveals ample support for the court's findings. At the time Officer Crown searched the bedroom, both Hand and Lewis were secured outside of the residence.[4]  *See* N.T., 5/26/2016, at 15-16, 30. Furthermore, Officer Crown testified that after Hand emerged from the bedroom, he could see the entire room except the left side behind the door. *See id.* at 16. The officer stated he went in to "check the bedroom to secure it for any other people that [were] in there." *Id.* at 15-16. However, Officer

---

[4] We note that, implicit in the court's ruling, is the determination that Officer Crown had the authority to enter the residence and secure Hand, whom the officer had seen with a weapon before Hand fled to the bedroom.

Crown failed to "articulate specific facts"[5] to justify his belief that another person, who posed a threat to his safety, might be in the bedroom. Indeed, as the trial court pointed out, when the officer peered through the broken window unannounced, he saw only Hand and Lewis. Moreover, although Officer Crown stated he saw "shadows moving under the [bedroom] door" while Hand was inside, the officer provided no further facts to support an inference that someone other than Hand was therein.[6] N.T., 5/26/2017, at 15. *Compare with Taylor*, *supra*, 771 A.2d at 1268 (OJAC finding protective sweep proper when two people officer saw enter the building minutes before execution of warrant were not visible on first floor); *Potts*, *supra*, at 1282 (protective sweep of apartment proper when officers were investigating possible domestic abuse; both woman who answered door, and man who ran into bedroom when he saw police, were sweating and scared).[7]

In *Buie*, the Supreme Court emphasized that a protective sweep must "last[] no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises." *Id.* at 335. Here, at the time Officer Hand conducted the search,

---

[5] *Potts*, *supra*, 73 A.3d at 1282.

[6] *See Buie*, *supra*, 494 U.S. at 332 (reiterating that reasonable suspicion must be based on more than "a mere inchoate and unparticularized suspicion or hunch") (citation and internal punctuation omitted).

[7] In *Potts*, it does not appear the male and female were removed from the apartment before the officer conducted the protective sweep. *See Potts*, *supra*, 73 A.3d at 1279, 1282.

both Hand and Lewis were detained **outside** of the residence. The more reasonable inference is that the officer entered the bedroom to search for the weapon he had seen in Hand's possession. Accordingly, we agree with the trial court that Officer Crown did not possess the requisite reasonable suspicion to conduct a protective sweep of the bedroom. Therefore, we affirm the order of the trial court granting Hand's pretrial suppression motion.

Order affirmed.

President Judge Emeritus Ford Elliott joins the majority decision.

Judge Bowes files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/27/2017