J-S24014-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAMEON RAWLINGS | : | |
| | : | |
| Appellant | : | No. 2638 EDA 2019 |

Appeal from the Judgment of Sentence Entered September 29, 2017
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0007291-2016

BEFORE:  BENDER, P.J.E., STABILE, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                 Filed: July 30, 2020

Appellant, Dameon Rawlings, appeals *nunc pro tunc* from the September 29, 2017 judgment of sentence of 24 to 48 months' incarceration, followed by 36 months' probation, imposed after he was convicted of access device fraud, forgery, and related offenses.  Appellant challenges the court's denial of his pretrial motion to suppress evidence, as well as the weight of the evidence to sustain his convictions.  We affirm.

Briefly, Appellant's convictions stem from evidence that he was manufacturing fraudulent passes for the Southeastern Pennsylvania Transportation Authority (SEPTA).  Prior to his trial, Appellant filed a motion to suppress evidence recovered from a motel room that he was occupying at the time of his arrest.  The trial court conducted a suppression hearing on

---

[*] Retired Senior Judge assigned to the Superior Court.

August 1, 2017. In its Pa.R.A.P. 1925(a) opinion, the court summarized the facts established at that proceeding, and its ruling on Appellant's motion, as follows:

> The instant case began on June 27, 2016, when officers were called to the Village Lodge Motel in Bristol, Pennsylvania[,] to respond to a report of a domestic assault. At the suppression hearing on August 1, 2017, Officer [John] Lancieri of the Bristol Township Police Department testified that upon arrival to the motel, he met with a woman who identified herself as [Appellant's] girlfriend, and informed him that [Appellant] had assaulted her in their motel room and that he had an active warrant for his arrest. After verifying the warrant on NCIC, Officer Lancieri learned from the arrest warrant that [Appellant] was considered to be armed and dangerous with violent tendencies and was considered to be a potential escape risk.
>
> Officer Lancieri waited for Sergeant [Kevin] Burns and Officer Leacock to arrive.[1] The three then walked towards the room [Appellant] was staying in, according to his girlfriend. Before Sergeant Burns was able to knock, [Appellant] opened the door and was instructed by police to get on the ground, to which he complied.
>
> Once [Appellant] was on the ground, Officer Lancieri asked him for his name. The officer testified that [Appellant] provided a name, but the name he gave was not Dameon Rawlings. Officer Lancieri further testified that[,] because at that point they did not know whether or not [Appellant] was actually the person they were looking for, they proceeded into the motel room to secure the property and check to see if anyone else who could be Rawlings was present in the room.
>
> Upon entering the room to search for Dameon Rawlings, Officer Lancieri saw the following in plain view: a printer, laptops, what appeared to be credit cards, what looked like a steel stamp, a laminating machine, boxes of paper with black strips, silver foil strips with images of buses and trains on them, a paper cutter, and a black backpack. After finding that no one else was present in the motel room, Officer Lancieri decided to check the black

---

[1] Officer Leacock's full name is not contained in the record.

backpack for identification for [Appellant]. While Officer Lancieri was searching for identification, [Appellant] identified himself as Dameon Rawlings. At that point, Officer Lancieri stopped looking for [identification] in the backpack and left the room.

Believing at that point that [Appellant] may have been illegally manufacturing some type of passes or other material, Sergeant Burns contacted Detective Beidler to apply for a search warrant on the room. The Assistant District Attorney on call initially advised the police that there did not appear to be probable cause for a search[,] and the police left the motel with [Appellant] and his girlfriend and took them to the police station for processing on the assault allegation and the warrant for [Appellant]. While at the police station[,] an internet search lead [*sic*] to the identification of the silver foil strips with images of buses and trains as something that appeared on SEPTA transit passes. A subsequent call to the Assistant District Attorney on call, led to approval of a request for a search warrant and the ultimate issuance of a search warrant for the room. The police then executed the search warrant and pursuant to it, seized the aforesaid items from the room.

\*\*\*

Before the waiver trial on August 1, 2017, [Appellant filed] … a Motion to Suppress, arguing that the officers unlawfully entered the motel room and therefore all evidence found within the room must be suppressed. [The court] determined that a protective sweep of the room was justified because the officers were given a false name by [Appellant] and believed that they still needed to search the room for a person with an active warrant out for his arrest[,] who was also a suspect in a domestic assault. All evidence observed during the course of the protective sweep of the room was in plain view; therefore, the motion to suppress was denied.

Trial Court Opinion (TCO), 11/12/19, at 1-3.

After the trial court denied Appellant's motion to suppress, the case immediately proceeded to a non-jury trial. At the close thereof, the court convicted Appellant of access device fraud (18 Pa.C.S. § 4106(a)(2)),

- 3 -

conspiracy to commit access device fraud (18 Pa.C.S. § 903), forgery (18 Pa.C.S. § 4101(a)(2)), unlawful device-making equipment (18 Pa.C.S. § 4106.1(a)(2)), and trademark counterfeiting (18 Pa.C.S. § 4119(a)(1)). On September 29, 2017, the court sentenced Appellant to the aggregate term stated *supra*.

Appellant filed a timely notice of appeal, but this Court dismissed that appeal based on Appellant's failure to file an appellate brief. Appellant thereafter filed a petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9564, seeking the restoration of his post-sentence motion and direct appeal rights. The PCRA court granted that petition, and Appellant timely-filed a "Post-Sentence Motion for Judgment of Acquittal, Motion for New Trial and Preservation of Issues and Motion for Reconsideration of Sentence." After a hearing, the court denied Appellant's motion on August 19, 2019.[2] On September 11, 2019, Appellant filed a *nunc pro tunc* appeal from his judgment of sentence.[3] He also timely complied with the trial court's order to file a

_____

[2] The court's order pertained to three different cases, including the present. In a separate case, the court granted Appellant's motion for reconsideration of his sentence. According to the court, at the hearing on Appellant's motion, he withdrew his request for sentencing reconsideration in the case now before us. Additionally, in its August 19, 2019 order, the court denied his remaining request for judgment of acquittal or a new trial in this case.

[3] Appellant's notice erroneously indicated that he is appealing from the court's August 19, 2019 order denying his post-sentence motion. "In a criminal action, appeal properly lies from the judgment of sentence made final by the denial of post-sentence motions." **Commonwealth v. Shamberger**, 788 A.2d 408, 410 n.2 (Pa. Super. 2001) (*en banc*) (citation omitted). We have corrected the caption accordingly. **See id.**

Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The trial court subsequently filed its Rule 1925(a) opinion.

On appeal, Appellant states three issues for our review:

I. Did the [t]rial [c]ourt err in failing to suppress the evidence gained in reliance upon an illegal search of a [m]otel room on June 27, 2016[,] at the Village Lodge[,] specifically Room 110, when said evidence was discovered after [Appellant] was in custody and in handcuffs outside of the room and with no testimony that police expected to find another person in the room?

II. Did the [t]rial [c]ourt err in holding that items found after a warrant had been eventually obtained were admissible when that warrant was issued reliant upon a search that was conducted without probable cause and without exigent circumstances, thus producing inadmissible evidence as "fruit of the poisonous tree[?]" Did the [t]rial [c]ourt further err when the warrant was never filed with the Clerk of Court for the Bucks County Court of Common Pleas as required by Pa.R.Crim.P. 210[,] which states such filing is mandatory?

III. Did the [t]rial [c]ourt err in finding that the evidence was of sufficient weight to convict [Appellant] of these crimes when such evidence was not linked to [Appellant] in any meaningful way?

Appellant's Brief at 5.

Appellant's first two issues are related and, thus, we address them together. Initially, we observe:

An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are

erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Smith*, 164 A.3d 1255, 1257 (Pa. Super. 2017) (cleaned up).

Here, Appellant first challenges the legality of Officer Lancieri's warrantless entry into his motel room. The trial court ruled that the officer acted lawfully, reasoning:

> Based on the evidence presented at the suppression hearing on August 1, 2017, [the court] found that the officers had reason to believe that their safety was a concern after learning from the arrest warrant that [Appellant] was possibly armed and dangerous, had violent tendencies, and was a potential flight risk[,] and learning from his girlfriend that he had recently assaulted her. Further, [the court] found that because [] Appellant did not initially provide officers with his proper name, they had reason to believe that the person they were looking for, who had a warrant out for his arrest, was still in the motel room.
>
> For the above reasons, we found that it was appropriate for the officers to have entered the room in order to do a protective sweep to determine whether anyone else was in the room, but more specifically, whether the wanted person they were looking for, Dameon Rawlings, was hiding somewhere in the motel room.

TCO at 5-6.

On appeal, Appellant argues that "Officer Lancieri clearly exceeded the lawful mandate of a protective sweep" when he entered Appellant's motel room after Appellant was detained outside. Appellant's Brief at 16. He stresses that he "was not a danger to police when he obeyed commands to get on the ground and was then handcuffed." *Id.* According to Appellant,

- 6 -

"[p]olice did not have any reason to believe that any other person was in the room." *Id.* In this regard, he insists that the "facts of the instant case differ dramatically" from those justifying the protective sweep in *Commonwealth v. Crouse*, 729 A.2d 588 (Pa. Super. 1999), where "police were admitted into a house and then heard sounds from the upstairs that led them to believe that other persons were in the house and that someone was in danger." Appellant's Brief at 18; *see also Crouse*, 729 A.2d at 590. Appellant also avers that Officer Lancieri's act of looking inside his bookbag demonstrates that the officer was not searching for people but, rather, he was searching for evidence. Because Officer Lancieri's protective sweep of the motel room was unlawful, Appellant insists that the subsequently obtained search warrant was "fruit of the poisonous tree," and the evidence seized during that search should have been suppressed.

Appellant's argument is meritless. In *Commonwealth v. Taylor*, 771 A.2d 1261 (Pa. 2001), our Supreme Court explained:

> Not every search must be conducted pursuant to a warrant, for the Fourth Amendment bars only unreasonable searches and seizures. *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 652 … (1995). While a search is generally not reasonable unless executed pursuant to a warrant, the Supreme Court of the United States and this Court have recognized exceptions to the warrant requirement. One well-recognized exception to the warrant requirement is the protective sweep.
>
> A protective sweep is "a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." *Maryland v. Buie*, 494 U.S. 325, 327 … (1990). *Buie* sets forth two levels of protective sweeps. *Id.* at 334…. The two levels are defined thus:

[A]s an incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched. Beyond that, however, we hold that there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.

*Id.* Pursuant to the first level of a protective sweep, without a showing of even reasonable suspicion, police officers may make cursory visual inspections of spaces immediately adjacent to the arrest scene, which could conceal an assailant. The scope of the second level permits a search for attackers further away from the place of arrest, provided that the officer who conducted the sweep can articulate specific facts to justify a reasonable fear for the safety of himself and others.

\*\*\*

To decide whether the facts justified a protective sweep, the reviewing court must consider all of the facts objectively and from the position of the reasonably prudent police officer. *Buie*, 494 U.S. at 327, 110 S.Ct. 1093.

*Id.* at 1266-67.

In this case, Appellant was arrested just outside the door of his motel room. Therefore, the room was immediately adjacent to the arrest scene, and an individual hiding in the room could have readily attacked the officers. Therefore, Officer Lancieri did not need probable cause or reasonable suspicion to enter the room to look under the bed, in the closet, and in the bathroom.

Nevertheless, even if those areas were within the scope of a second-level sweep, the officer articulated specific facts "which, taken together with the rational inferences from those facts, would warrant a reasonably

prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." **Id.** at 1267-68 (cleaned up). Namely, Officer Lancieri testified that Appellant had an active warrant for his arrest, which indicated that Appellant was potentially armed and dangerous with violent tendencies. N.T., 8/1/17, at 11-12. When officers arrived at the motel room and apprehended Appellant outside, he provided a name other than "Dameon Rawlings." **Id.** at 14. Accordingly, Officer Lancieri reasonably believed that the person he was searching for could still be inside the room. The officer testified that he entered the room "[t]o secure the property … to make sure nobody else [was] in the room," as there were places in the room that a person could have been hiding. **Id.** at 15. We conclude that Officer Lancieri articulated sufficient facts, which, "when taken together with the rational inferences from those facts, would give the police reasonable concerns for their safety." **Taylor**, 771 A.2d at 1268 (cleaned up). Accordingly, the officer lawfully entered Appellant's motel room to conduct a protective sweep.

Appellant insists, however, that Officer Lancieri's search of his bookbag exceeded the scope of the sweep. We agree. In **Taylor**, the Court concluded that a search of coats found in Taylor's basement after his arrest was not justified as part of the protective sweep, as "a protective sweep extends only to a visual inspection of those places in which a person might be hiding and lasts no longer than is necessary to dispel the fear of danger." **Taylor**, 771 A.2d at 1268. Additionally, the Court held that the search was not a valid

search incident to arrest because the coats were not within Taylor's immediate control.

Here, a person clearly could not have been hiding in Appellant's bookbag, and it was searched after Officer Lancieri dispelled his fear that another individual might be hiding somewhere inside the room. Further, Appellant was arrested outside the room, and nothing in the record indicates that the bookbag was within his immediate control. Accordingly, Officer Lancieri's search of Appellant's bag was improper.

Nevertheless, we discern no reversible error. As the Commonwealth observes, Officer Lancieri's opening the bag, which occurred

> after the initial, lawful sweep of the motel room, was … carried out in an attempt to determine the identity of the individual that police had arrested[,] rather than as a pretext for an evidentiary search. Officer Lancieri testified at the suppression hearing that he opened the backpack for the sole purpose of searching for … Appellant's identification, and [he] immediately stopped once Appellant had identified himself. N.T. … [at] 16, 28.

Commonwealth's Brief at 18. We agree with the Commonwealth that Officer Lancieri's act of briefly searching the bag for Appellant's identification did not invalidate his otherwise lawful sweep of the motel room.

Furthermore, we conclude that the improper search of Appellant's bookbag did not invalidate the search warrant as "fruit of the poisonous tree." We have explained that "[t]he fruit of the poisonous tree doctrine excluded evidence obtained from, or acquired as a consequence of, lawless official acts." ***Commonwealth v. Torres***, 177 A.3d 263, 276 (Pa. Super. 2017) (cleaned

up). "A fruit of the poisonous tree argument requires an antecedent illegality."

***Id.*** (citation omitted). Additionally:

> [Not all evidence] is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at [*sic*] by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.

***Commonwealth v. Burno***, 154 A.3d 764, 788 (Pa. 2017) (quoting ***Wong Sun v. United States***, 371 U.S. 471, 488 (1963)).

Here, nothing in the record suggests — nor does Appellant contend — that Officer Lancieri observed any evidence during his cursory search of Appellant's bookbag that was used in obtaining the search warrant in this case. In other words, the evidence admitted in this case was not come by through Officer Lancieri's illegal act of opening Appellant's bookbag; rather, it was seized pursuant to a search warrant that was premised only on evidence observed in plain view by Officer Lancieri during the lawful, protective sweep of the motel room.

We also reject Appellant's undeveloped challenge to the probable cause supporting the issuance of the warrant. Appellant cursorily avers that Officer Lancieri only saw "legal items" in the room, and it was not until the officers' subsequent internet search that they developed a theory that those items were being used for criminal purposes. Appellant's Brief at 22. Appellant offers no discussion, nor citation to any legal authority, to support his suggestion that the officers were not permitted to rely on information gathered

from the internet to explain, in the application for the warrant, why there was probable cause to search the motel room. At the suppression hearing, Detective Gregory Beidler, who filled out the warrant application, testified that he looked at images of a SEPTA pass online to establish that it had images of buses and trains similar to those observed on the tinfoil strips seen in Appellant's motel room. N.T. at 59-60. We discern nothing improper about the detective's using this internet information, in addition to the items observed in plain view in Appellant's motel room, to demonstrate probable cause for the search warrant.

Finally, Appellant argues that the trial court erred by denying his motion to suppress because the Commonwealth failed to file the search warrant with the Bucks County Clerk of Courts as required by Pa.R.Crim.P. 210 ("The judicial officer to whom the warrant was returned shall file the search warrant, all supporting affidavits, and the inventory with the clerk of the court of common pleas of the judicial district in which the property was seized."). Appellant concedes that "[a] technical failure to comply with a rule is not necessarily grounds for evidence to be excluded." Appellant's Brief at 22 (citing **Commonwealth v. Gentile**, 632 A.2d 573, 576-77 (Pa. Super. 1993)). He insists, however, that "in the present case, the failure to follow a procedural rule is additional evidence of law enforcement's actions outside of the barriers provided for in criminal procedure." **Id.** at 22-23. He continues:

> The violation of [Rule] 210 is symptomatic of the actions of the police in this case and is part of an entire picture of police not following the procedures required to protect Appellant's

constitutional rights. The evidence was obtained via a visual search for persons that became a search in bags for identification. The protective sweep became a search for evidentiary items. A determination was made that not enough evidence existed for a warrant. Police then conducted an internet search for lawful items seen in that visual search. Then, and only then, was a warrant obtained. That warrant was based upon quicksand when looked at as part of an overall picture.

*Id.* at 23.

Appellant is not entitled to relief. In **Commonwealth v. Rucci**, 670 A.2d 1129 (Pa. 1996), our Supreme Court declared that the "exclusion/suppression of evidence is not an appropriate remedy for every violation of the Pennsylvania Rules of Criminal Procedure concerning searches and seizures. It is only where the violation also implicates fundamental, constitutional concerns, is conducted in bad faith or has substantially prejudiced the defendant that exclusion *may* be an appropriate remedy." **Id.** at 1137 (emphasis added). Here, Appellant does not claim that the violation of Rule 210 was done in bad faith, nor explain how that error caused him prejudice or implicated fundamental constitutional or concerns.

Additionally, we reject Appellant's assertion that the violation of Rule 210 was just another example of police misconduct in this case. To the contrary, Officer Lancieri lawfully entered Appellant's motel room to conduct a protective sweep. While he improperly opened Appellant's bookbag to search for identification, he immediately stopped that search when Appellant offered his name. The officers then consulted with the District Attorney's Office about obtaining a search warrant, conducted further investigation (via the internet) into the possible illegal uses of the items in the motel room, and

then applied for a warrant with the information they found. When the warrant was obtained, the officers searched the motel room in accordance therewith. We discern no egregious or bad faith conduct by the officers, nor blatant violations of Appellant's constitutional rights, that would warrant reversal of the suppression court's decision. Accordingly, Appellant's first two issues are meritless.

In Appellant's third and final claim, he maintains that the trial court's verdict was contrary to the weight of the evidence presented at trial. In support, he solely contends that, for the reasons set forth in his first two issues, the evidence in this case should have been suppressed. He then insists that, "[o]nce the evidence is removed, all that remains is a recorded telephone call between Appellant and his co-defendant. Such evidence is not of sufficient weight to demonstrate beyond a reasonable doubt that Appellant committed any crime." Appellant's Brief at 24-25.

Clearly, Appellant's entire argument hinges on a conclusion that the trial court erred by denying his motion to suppress. For the reasons set forth above, we do not reach this result. Accordingly, Appellant's third issue is meritless.

Judgment of sentence affirmed.

Judge Stabile joins this memorandum.

Judge Strassburger files a concurring statement in which President Judge Emeritus Bender and Judge Stabile join.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/30/20