J. S69018/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| CHRISTOPHER H. COZZALIO, | : | No. 1281 EDA 2015 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, April 23, 2015,
in the Court of Common Pleas of Chester County
Criminal Division at No. CP-15-CR-0003113-2014

BEFORE: GANTMAN, P.J., FORD ELLIOTT, P.J.E., AND OLSON, J.

MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED JANUARY 13, 2016**

Christopher H. Cozzalio appeals from the April 23, 2015 judgment of
sentence following his conviction of possession of marijuana.[1] We affirm.

The trial court provided the following relevant findings of fact and
conclusions of law:

1.   On August 13, 2014, Officer Richard Barth and
     Sergeant Matthew Deceder of the West
     Whitefield Township Police Department
     responded to a 911 call regarding a domestic
     disturbance at 215 Aberdeen Avenue, Exton,
     Chester County.

2.   The officer and the sergeant were not familiar
     with the residents or the layout of the
     apartment at that address. They knocked on
     the front door and announced their presence.
     They heard raised voices coming from inside
     the residence and a female's loud scream (one

---

[1] 35 P.S. § 780-113(a)(31).

of the officers described the scream as "blood-curdling"). The officer radioed for assistance and the sergeant forced open the front door by kicking it.

3. The officer and the sergeant saw a staircase leading up to the living space of the apartment. The defendant was standing at the top of the stairs and a female was standing in front of the defendant screaming for the defendant to let her go.

4. The defendant was instructed to "get down." The defendant did not comply until the officers drew their weapons and again instructed the defendant to "get down."

5. There were red marks on the female's neck observed by both officers.

6. The male and female were separated. Officer Barth escorted the female, and the young child she was carrying, outside while Sergeant Deceder placed the defendant in handcuffs and had him sit on the living room couch.

7. Two minutes after the officer had called for back-up, Lieutenant Matthew Herkner of the West Whiteland Township Police Department arrived at the scene. The lieutenant saw the officer taking a statement from the "hysterical" female and was told that the sergeant was alone with the defendant in the apartment.

8. The lieutenant continued to the second floor apartment to assist Sergeant Deceder with the defendant.

9. The sergeant told the lieutenant that the other rooms in the apartment had not been checked.

10. The officers did not know whether there were or were not any other individuals in the

apartment but had concerns for their safety and felt vulnerable to attack from the adjacent rooms while in the apartment with the defendant who was detained and subsequently arrested.

11. The bedroom was one of the rooms immediately adjacent to the living room.

12. The lieutenant conducted a protective sweep of the bedroom and saw what he recognized to be marijuana and drug paraphernalia on a table at the foot of the bed. The lieutenant also saw a loaded, semi-automatic Glock 9mm pistol on a shelf in the closet.

13. The gun was seized immediately for safety reasons. There are no criminal charges, relating to the gun, pending against the defendant.

14. The defendant was arrested and charged with assault related to the domestic altercation and possession of a controlled substance and drug paraphernalia.

<u>Conclusions of Law</u>

. . . .

2. When the sergeant handcuffed the defendant, the sergeant deprived the defendant of his physical freedom of action. ***Commonwealth v. Medley***, 531 Pa. 279, 612 A.2d 430 (1992). The sergeant testified that his intention, at the time he handcuffed the defendant, was to detain him during the course of their investigation of the domestic altercation. Arguably, the defendant was under arrest at the point he was handcuffed irrespective of the sergeant's intention. If that is the case, the protective sweep was incident to arrest and falls under the exception. It certainly was a protective sweep of the "arrest scene" given

the fact that the defendant was arrested before the officers left the residence.

3. The officers were able to articulate their suspicions and concerns for their safety allowing them to perform a protective sweep of the rooms adjacent to the living room where they had the defendant detained. The situation was a violent, fluid scene.

Order of court, 11/5/14 at 1-2. Appellant was also charged with three counts of harassment and possession of marijuana. On September 16, 2014, appellant filed a motion to suppress evidence seized from his apartment, claiming that the search and seizure conducted incident to appellant's arrest was in violation of his rights under the United States and Pennsylvania Constitutions. A hearing was held on October 21, 2014, and the trial court denied appellant's motion to suppress.

On April 23, 2015, the day of the trial, the Commonwealth withdrew all charges with the exception of possession of marijuana. A bench trial was held and the trial court found appellant guilty and imposed a fine of $200. On April 24, 2015, appellant filed a post-sentence motion, which was denied by the trial court. Appellant filed a notice of appeal on May 5, 2015. The trial court ordered appellant to produce a concise statement of matters complained of on appeal on May 7, 2015, pursuant to Pa.R.A.P. 1925(b), with which appellant complied on May 27, 2015. The trial court has filed an opinion pursuant to Pa.R.A.P. 1925(a).

Appellant raises the following issue for our review:

1. Did the trial court err in denying defendant's Motion to Suppress because police officers had no authority to conduct a "protective sweep" throughout the various rooms of the residence?

Appellant's brief at 3.

Our standard of review for challenges to the denial of a motion to suppress is as follows:

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Best*, 120 A.3d 329, 346 (Pa.Super. 2014), quoting

*Commonwealth v. Perel*, 107 A.3d 185, 188 (Pa.Super. 2014), *appeal*

*denied*, ___ A.3d ___ (Pa. 2015) (citations omitted).

Both the United States Constitution and the Pennsylvania Constitution guarantee that individuals shall not be subject to unreasonable searches or

seizures. *See* U.S. Const. Amend. IV; Pa. Const. Art. I, § 8. A search or seizure conducted without a warrant is, under the Fourth Amendment and Article I, Section 8, presumed to be unreasonable. *Commonwealth v. McCree,* 924 A.2d 621, 627 (Pa. 2007) (citations omitted).

Evidence obtained as a result of an unlawful search is subject to the fruit of the poisonous tree doctrine. The United States Supreme Court has stated that any material, tangible, or verbal evidence "obtained either during or as a direct result of an unlawful invasion" is inadmissible at trial. *Wong Sun v. United States*, 371 U.S. 471, 485 (1963).

The United States Supreme Court has recognized exceptions to the warrant requirement, including a search conducted incident to a lawful arrest, also known as a "protective sweep." *Maryland v. Buie*, 494 U.S. 325 (1990). In *Buie*, the Supreme Court held that, "the Fourth Amendment would permit [a protective sweep] if the searching officer 'possesse[d] a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences of those facts, reasonably warrante[d]" the officer in believing,' that the area swept harbored an individual posing a danger to the officer or others." *Id.* at 327, quoting *Michigan v. Long*, 463 U.S. 1032, 1049-1050 (1983) (citations omitted).

The Court established the following standard in which a protective sweep without a warrant could take place without violating an individual's Fourth Amendment rights:

> [A]s an incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched. Beyond that, however, we hold that there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.

*Id.* at 334 (footnotes omitted).

Pennsylvania adopted the protective sweep exception to the warrant requirement in *Commonwealth v. Taylor*, 771 A.2d 1261 (Pa. 2001); *see also In re J.E.*, 937 A.2d 421, 425 (Pa. 2007) (stating that the protective sweep search is limited to "ensure the safety of arresting officers"). In *Taylor*, our supreme court applied the same standard as *Buie*:

> To decide whether the facts justified a protective sweep, the reviewing court must consider all of the facts objectively and from the position of the reasonably prudent police officer. Because the sweep in the present case extended beyond the area within the immediate vicinity of the arrest, there must be "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene."

*Id.* at 1267-1268, citing *Buie*, 494 U.S. at 327, 334. The *Taylor* court also made clear that "the scope of a protective sweep extends only to a visual inspection of those places in which a person might be hiding and lasts no longer than is necessary to dispel the fear of danger." *Taylor*, 771 A.2d at

1268 (citations omitted); *see also Commonwealth v. Crouse*, 729 A.2d 588, 598 (Pa.Super. 1999) (protective sweeps "cannot be used as a pretext for an evidentiary search" and can only target "areas where a person could reasonably be expected to hide"), *appeal denied*, 747 A.2d 364 (Pa. 1999).

We also note that, "[i]f, while conducting a [protective sweep], the officer should, as here, discover contraband other than weapons, he clearly cannot be required to ignore the contraband, and the Fourth Amendment does not require its suppression in such circumstances." *Commonwealth v. Potts*, 73 A.3d 1275, 1282 (Pa.Super. 2013), quoting *Long*, 463 U.S. at 1049-1050. *See also Commonwealth v. Witman*, 750 A.2d 327, 336 (Pa.Super. 2000) (stating that evidence observed in plain view during a protective sweep is admissible).

In the case *sub judice*, appellant avers that the police did not conduct a lawful protective sweep and that the police did not have the authority to seize evidence discovered during the protective sweep. As noted *supra*, in order for the police to conduct a protective sweep incident to arrest beyond the immediate vicinity of the arrest, the police must be able to articulate facts that would cause a reasonably prudent police officer to believe that there was a danger to the officer's safety on the premises.

Here, the trial court found that the officers did not know if anyone else was in the apartment and they had concerns for their safety. (*See* trial court findings of facts and conclusions of law, 11/5/14 at 2.) The officers

were unfamiliar with appellant's apartment, were unfamiliar with both appellant and the female victim, and could not say for certain whether anyone else was inside the apartment and, therefore, were justified in conducting a protective sweep beyond the immediate vicinity of the arrest. The record supports the trial court's factual finding through Sergeant Deceder's following testimony:

> Q: Can you articulate any facts which then [led] you to conclude there was anyone else in the apartment?
>
> A: . . . I was [in] very close proximity to the actual entryway doorway to the apartment, therefore the majority of the apartment was unavailable to me as far as viewing it. I could see the kitchen. I could not tell if anyone was there or not.
>
> Q: Would it be fair to say you didn't have any reason to believe either there was or was not anyone else in the apartment, right?
>
> A: In my training I always assume there is [sic] more people in a residence than there are, so I do not -- I didn't know who lived there before. I'd never been to the residence before.
>
> Q: . . . Is it correct that you didn't have any information that [led] you affirmatively to conclude there was anybody else there?
>
> A: I had no information whether there were or wasn't [sic].

Notes of testimony, 10/21/14 at 26-27. Lieutenant Herkner also testified that he "had no knowledge whether there was or was not [sic] any additional people in there." (*Id.* at 34.) The officers' testimony provides ample

support within the record that articulable facts existed that would cause a reasonably prudent police officer to believe that an individual may be hiding somewhere in the apartment.

We therefore find that the protective sweep of appellant's apartment was in compliance with our supreme court's decision in *Taylor* and that the police were authorized to conduct a cursory search to determine whether additional parties were in the apartment, and were also authorized to seize any contraband that was visible in plain view.[2]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/13/2016

---

[2] In his motion to suppress and in his brief, appellant did not argue with specificity whether, if the officers were justified in conducting a protective sweep, any of the contraband seized was inadmissible because it was not in plain view.