J-S21044-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                                        :  PENNSYLVANIA
           Appellant                 :
                                          :
                                          :
          v.                     :
                                          :
                                          :
DOMINIQUE TASHAWN-TYRELL     :  No. 1490 MDA 2022
HIGHTOWER                      :

Appeal from the Order Entered October 13, 2022
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0005926-2021

BEFORE:  BOWES, J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:       **FILED NOVEMBER 08, 2023**

The Commonwealth of Pennsylvania appeals from the order entered in the Court of Common Pleas of York County (trial court) granting the motion to suppress evidence filed by Dominique Tashawn-Tyrell Hightower (Hightower).  The Commonwealth challenges the trial court's application of the protective sweep and plain view exceptions to the search warrant requirement.  We affirm.[1]

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] This interlocutory appeal is taken as of right pursuant to Pennsylvania Rule of Appellate Procedure 311.  **See** Pa.R.A.P. 311(d).

**I.**

**A.**

This case arises from Hightower's November 3, 2021 arrest on the front porch of his two-story rowhome on outstanding charges of fleeing or attempting to elude a police officer. Police conducted surveillance on the Hightower property for five days before the arrest and observed only Hightower, co-defendant Saquana Tawane Layer (Layer) and their two young children entering and exiting the house.

During a protective sweep of the residence incident to Hightower's arrest after he had been detained, the arresting officer, York City Police Officer Peter Fouad, observed a small amount of loose marijuana, foil bags, a box of sandwich baggies and gelato resealable bags on top of a dresser located in the second-floor master bedroom. These observations formed the basis for the application of a search warrant for the residence. During execution of the search warrant, police recovered quantities of marijuana, numerous individual packages of crack/powder cocaine, fentanyl packed for sale, a significant amount of cash, packaging material, a digital scale and a key fob for a Honda Accord parked directly in front of the home. A handgun and loaded magazine were later recovered from the Honda Accord after police obtained a warrant to search it. Hightower was charged with four counts of possession with intent

to deliver a controlled substance (PWID) and one count each of criminal conspiracy to commit PWID and person not to possess a firearm.[2]

**B.**

Hightower filed a motion to suppress the evidence and the trial court held a hearing on April 8, 2022, at which Detective Kyle Pitts and Police Officers Adam Northstein and Peter Fouad appeared as witnesses. Detective Pitts testified that he has worked for the police department for 14 years and that he assisted in arresting Hightower on November 3, 2021. Before the arrest, Detective Pitts had developed information from multiple confidential sources indicating that Hightower was involved in the distribution of illegal narcotics and was likely in possession of a firearm.

The detective advised that the U.S. Marshalls Fugitive Task Force and various city officials were involved in execution of the arrest warrant. The police team knocked and announced their presence and one of the officers observed movement at a second-floor window when someone moved the blinds. They continued to announce their presence for several minutes until Hightower said on the other side of the door that he was coming out. Hightower was taken into custody after a brief struggle where he failed to

---

[2] 35 P.S. § 780-113(a)(30), 18 Pa.C.S. §§ 903(a)(1) and 6105(a)(1). Co-defendant Layer was charged with four counts of PWID and one count of criminal conspiracy to commit PWID. She has filed an appeal at J-S21043-23 and we have issued a nearly identical Memorandum in that case.

comply with verbal commands. While he was being taken to the ground and handcuffed, someone from inside the residence attempted to shut the front door.

The police team continued into the residence to conduct a security sweep. Detective Pitts explained that protective sweeps are always conducted when executing an arrest warrant to "look for any other persons within the residence that could potentially harm officers on scene." (N.T. Suppression, 4/08/22, at 9). Layer and two young children were quickly located within the house and they were not handcuffed as they were not considered a safety threat. (*See id.* at 20-21).

On cross-examination, Detective Pitts explained that police surveillance of the residence before the arrest was limited to the front door and did not include the back door because of positioning and manpower constraints. He clarified that during the arrest, Hightower was pulled out of the residence and was arrested on the front porch. Police used some degree of force to pass through the door to conduct the protective sweep, as someone was shutting the front door from inside the residence. (*See id.* at 32). Detective Pitts relayed that police immediately encountered Layer on the first floor, that one of the children was with her and another child was coming down the stairs. (*See id.* at 33). He testified that police proceeded upstairs to look for persons that could cause harm, and while upstairs, another officer pointed out to him loose marijuana on a dresser in the master bedroom.

Officer Northstein testified that he has been a police officer for approximately five years and that during execution of the arrest warrant he was at the front of the residence watching the second-floor windows. He stated that upon the initial knock and announcement, a set of blinds on a second-floor window moved and a person looked out and immediately shut the blinds again. The officer participated in conducting the protective sweep, as was customary when making an arrest "to make sure there are no other threats immediately inside that residence." (**See id.** at 43).

Officer Fouad testified that he has worked for the police department for four years and was part of the entry team in executing the arrest warrant. Because Hightower initially stood at the front door and ignored commands that he come out, the officers pulled him away from the door and took him to the ground to handcuff him. During this time, Hightower appeared to be trying to talk to someone inside the residence to his left. (**See id.** at 52). Officer Fouad arrested Hightower, patted him down and searched him. Officer Fouad then handed Hightower off to another officer and he entered the residence to join the police team already conducting the protective sweep. Officer Fouad proceeded to the master bedroom to make sure it was clear and observed foil bags, a box of sandwich baggies, gelato resealable bags and loose marijuana

sitting on top of a dresser.[3]  As a result of the items he observed during the sweep, police obtained a search warrant for the residence.

Officer Fouad testified that he executed the search warrant and that a black hoodie collected in the search held a key fob for the Honda Accord parked in front of the residence.  Officer Fouad averred that when standing outside the vehicle, he observed the grip of a handgun sitting under the driver's seat.  He seized the firearm and cleared it, but did not perform any other search of the vehicle at that time.  A search warrant was obtained for the vehicle after a canine hit on it.  (*See id.* at 57).

On cross-examination, Officer Fouad testified that after Hightower was handcuffed and Layer and the children were located in the residence, he believed there were other potential threats or dangers within the home "based on the movement that they called out when we were outside the house." (*Id.* at 59-60).  He agreed with defense counsel that no person could fit within the drawers of the dresser in the master bedroom and that no one could have positioned themselves behind the dresser because it was against a wall.  (*See id.* at 62).  Officer Fouad testified that he believed based on his training and

_____

[3] Officer Fouad also testified that the top drawer of the dresser was open and he observed wads of cash in the drawer in plain view.  (*See id.* at 54).  However, the trial court did not find this testimony credible because it was inconsistent with the evidentiary photographs of the dresser showing the drawer closed.  (*See* Trial Court Opinion, 10/13/22, at 9).  The Commonwealth is not contesting the trial court's finding concerning the cash on appeal.  (*See* Commonwealth's Brief, at 10 n.1).

experience that the baggies and other materials he observed alongside the loose marijuana were packaging for marijuana. When asked to identify the marijuana in an evidentiary photograph of the dresser taken at the scene, he circled two small "specks." (***Id.*** at 65).

The trial court deferred ruling on the motion pending the submission of briefs. On October 13, 2022, the court entered an Order and Opinion granting suppression of the evidence seized during the search of the residence and the vehicle. The trial court held as an initial matter that under the circumstances of Hightower's arrest, there was a need for police to conduct a limited protective sweep to ensure officer safety and pointed to police observation of movement in the upstairs window blind, the resistance they faced from Hightower at the front door during his arrest, the attempt of someone within the residence to close the door, and the fact that the officers could not see the back of the house. (***See*** Trial Ct. Op., 10/13/22, at 7-8). However, the court went on to hold that "the protective sweep exceeded the cursory inspection allowed under such conditions as there were not enough articulable facts and inferences to give rise to reasonable suspicion to conduct a more thorough search of the dresser area." (***Id.*** at 8).[4] The court additionally found that because the loose "tiny specks" of marijuana and the wads of cash were

---

[4] ***See Maryland v. Buie***, 494 U.S. 325 (1990) (outlining parameters for lawful protective sweep).

the probable cause given to obtain the search warrant for the residence which, in turn, led to the search warrant for the vehicle, the warrants were invalid and the evidence seized must be suppressed. (*See id.* at 9-10).

With regard to the Commonwealth's position that the items on the dresser including the loose marijuana were in plain view, the court indicated in its Rule 1925 opinion that it did not find credible the proposition that "a reasonably cautious man conducting a protective sweep to search for persons would have spotted tiny specks of loose marijuana" among a variety of items. It reiterated that "the cursory inspection allowed under a protective sweep was surpassed because law enforcement overstepped and abused the protective sweep to conduct an evidentiary search." (*See* Trial Ct. Op., 12/22/22, at 9-10). The Commonwealth timely appealed and it and the trial court complied with Rule 1925. *See* Pa.R.A.P. 1925(a)-(b).

## II.

The Commonwealth contends that the trial court erred in granting Hightower's suppression motion where the protective sweep and plain view doctrine justified the search of his residence and seizure of items therein. (*See* Commonwealth's Brief, 10-19).[5] It maintains that because the trial court

---

[5]

When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the

*(Footnote Continued Next Page)*

determined that the protective sweep of the residence incident to Hightower's arrest was constitutional,[6] the marijuana detritus and packaging material observed on top of the dresser was admissible pursuant to the plain view exception to the warrant requirement. (*See id.* at 11, 15).

We begin by observing that "both the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution guarantee individuals freedom from unreasonable searches and seizures." *Commonwealth v. Heidelberg*, 267 A.3d 492, 502 (Pa. Super. 2021) (*en banc*), *appeal denied*, 279 A.3d 38 (Pa. 2022) (citation omitted). "As a general rule, a warrant stating probable cause is required before a police officer may

_____

entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however, we maintain *de novo* review over the suppression court's legal conclusions.

Further, it is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony.

*Commonwealth v. Ross*, 2023 WL 4068547, at *2 (Pa. Super. filed June 20, 2023) (citations omitted).

[6] The Commonwealth's assertion that the trial court found the protective sweep constitutional ignores the court's ultimate conclusion that the scope of the sweep exceeded what is lawfully permissible.

search for or seize evidence." *Id.* (citation omitted). "Absent the application of one of a few clearly delineated exceptions, a warrantless search or seizure is presumptively unreasonable." *Id.* (citation omitted). "One well-recognized exception to the warrant requirement is the protective sweep." *Commonwealth v. Taylor*, 771 A.2d 1261, 1267 (Pa. 2001).

> Police may perform a 'protective sweep' as an incident to a lawful arrest, in order to protect the safety of police officers and others. *See Buie v. Maryland*, 494 U.S. 325 (1990). In such circumstances, officers may look into spaces immediately adjoining the place of arrest from which an attack could be immediately launched without any degree of suspicion other than that necessary to support the arrest. **A protective sweep beyond such 'immediately adjoining' areas is proper if police can 'articulate specific facts to justify a reasonable fear' for the safety of police officers or others**. We consider the information available to police at the time of the sweep from the perspective of a reasonably prudent police officer.

*Commonwealth v. Hall*, 199 A.3d 954, 959 (Pa. Super. 2018) (some citations and quotation marks omitted).[7]

In *Buie*, the United States Supreme Court emphasized:

> . . . that such a protective sweep, aimed at protecting the arresting officers, if justified by the circumstances, is nevertheless not a full search of the premises, but may extend only to a cursory inspection of those spaces where a person may be found. **The sweep lasts no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises**.

---

[7] The Pennsylvania Constitution applies the same standards to protective sweeps as the United States Constitution. *See id.* at n.3.

*Buie*, *supra* at 335 (emphasis added).

In *Taylor*, *supra*, our Supreme Court explained:

> *Buie* **sets forth two levels of protective sweeps**. The two levels are defined thus: [A]s an incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched. **Beyond that, however, we hold that there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene**.
>
> Pursuant to the first level of a protective sweep, without a showing of even reasonable suspicion, police officers may make cursory visual inspections of spaces immediately adjacent to the arrest scene, which could conceal an assailant. The scope of the second level permits a search for attackers further away from the place of arrest, provided that the officer who conducted the sweep can articulate specific facts to justify a reasonable fear for the safety of himself and others.

*Id.* at 1267 (emphasis added). Thus, "the scope of a protective sweep extends only to a visual inspection of those places in which a person might be hiding and lasts no longer than is necessary to dispel the fear of danger." *Id.* at 1268 (citation omitted).

"The logic behind a protective sweep or security check is simple and straightforward. Where the safety of the arresting officers can be jeopardized, their safety outweighs the minimal intrusion a properly executed sweep may have upon an individual's privacy." *Commonwealth v. Crouse*, 729 A.2d 588, 598 (Pa. Super. 1999), *appeal denied*, 747 A.2d 364 (Pa. 1999). Protective sweeps envision a sweep for persons and "cannot be used as a

- 11 -

pretext for an evidentiary search." *Id.* However, if an officer discovers contraband while conducting a proper protective sweep, he is not required to ignore it and the Fourth Amendment does not require its suppression. *See Commonwealth v. Potts*, 73 A.3d 1275, 1282 (Pa. Super. 2013); *see also Commonwealth v. Witman*, 750 A.2d 327, 336 (Pa. Super. 2000) (stating evidence observed in plain view during lawful and appropriate protective sweep is admissible).

As noted *supra*, in order for the police to conduct a protective sweep incident to arrest beyond the immediate vicinity of the arrest, *i.e.*, a second level sweep permitting a search for attackers further away from the place of arrest, the police must be able to articulate specific facts that would cause a reasonably prudent police officer to believe that there was a danger to the officer's safety on the premises. *See Taylor*, *supra* at 1267. In *Buie*, the Supreme Court emphasized that the duration of the sweep must "last[] no longer than is necessary to dispel the reasonable suspicion of danger and in any event **no longer than it takes to complete the arrest and depart the premises**." *Buie*, *supra* at 335 (emphasis added).

In this case, at the time the officers conducted the second level sweep beyond the immediate vicinity of the arrest, when police entered the master bedroom, Hightower was outside the home in handcuffs and all likely occupants of the residence were secured. Layer and the two children were on the first floor and were not handcuffed because they did not present a safety

concern. Although the police witnesses testified that they proceeded to the second floor of the house to check for persons who may have posed a danger, they failed to articulate sufficient facts to justify the second level search beyond the areas immediately adjoining the arrest.

First, the record does not support an inference that someone potentially hiding in the master bedroom presented a threat to the officers' safety, given that Hightower's arrest was complete, he was outside the house and police were free to depart the premises. Second, as the police officers recognized, the Hightower residence had been under surveillance for five days preceding his arrest on the fleeing/eluding charge and the only individuals who had been seen entering or exiting the premises in addition to Hightower were Layer and the two children. The more reasonable inference is that the officers entered the master bedroom to search for the narcotics they believed were at the premises based on information developed through confidential informants in a separate investigation. Accordingly, we conclude that the officers' actions went beyond the scope of conducting a proper protective sweep incident to Hightower's arrest.

Additionally, even if we were to find that police were permitted to conduct a sweep of the second floor for hidden persons, we would conclude that the search of the dresser was outside the scope of a protective sweep. As previously noted, Officer Fouad testified that he observed "cherry gelato, foil bags, a box of sandwich baggies, loose marijuana" on the dresser and the

"top drawer of the dresser was cracked open, and I could see inside the drawer wads of cash in plain view." (N.T. Trial, at 54). He further testified that he obtained a search warrant based on these observations. However, the trial court did not find Officer Fouad's testimony as to the wads of cash visible in the top drawer credible because the crime scene photographs depicted the drawer was closed. (*See id.* at 61-62). Officer Fouad also acknowledged that no one could hide behind the dresser because it was positioned against a wall, nor could anyone fit within the dresser drawers. (*See id.* at 62). Under these circumstances, we would conclude that a limited protective sweep of the second floor for hidden persons would not have led to police observation of tiny loose specks of suspected marijuana on top of a dresser.

With regard to the Commonwealth's companion argument that the plain view doctrine operates to prevent suppression, it also fails. "The plain view doctrine provides that evidence in plain view of the police can be seized without a warrant." *Commonwealth v. Luczki*, 212 A.3d 530, 546 (Pa. Super. 2019) (citation omitted). However, "inherent in the plain view doctrine is the principle the seized object must not have been put in plain view as a result of unlawful police conduct." *Heidelberg*, *supra* at 504 (citation omitted). Under the plain view doctrine, a warrantless seizure of an item is only permissible when "(1) an officer views the object from a lawful vantage point; (2) it is immediately apparent to him that the object is incriminating; and (3) the officer has a lawful right of access to the object." *Id.* (citation

omitted). Here, since the extended search of Hightower's house was an unlawful protective sweep, the officers did not observe the seized contraband from a lawful vantage point nor have a lawful right of access to it. Thus, the plain view doctrine is not applicable.

In sum, we conclude that the trial court did not abuse its discretion or commit an error of law in granting Hightower's pretrial suppression motion and, therefore, affirm its October 13, 2022 Suppression Order.[8]

Order affirmed.

Judge Bowes files a dissenting memorandum.

Judge Nichols files a concurring memorandum.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/8/2023

---

[8] The Commonwealth originally raised sub-claims regarding the suppression of items seized pursuant to the search warrants for the residence and vehicle. However, the Commonwealth and the trial court acknowledge that the issue of the legality of the warrants is controlled by this Court's disposition of the arguments concerning the protective sweep and plain view doctrine. (**See** Commonwealth Brief, at 4, 9, 20; Trial Court Op., 12/22/22, at 10). The claims concerning the warrants are rendered moot by our disposition affirming suppression.